UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

DANNY ABRAHAMS, ANTHONY CELARDO,
KEVIN CHRISTMAN, LAUREN EPSTEIN,
MERYL JACKELOW, EVAN SKIDMORE,
DAVID TINDAL, LEE WOLBROM, JOSE
DELEON, TRACEY GILBERT, VISHNU
KONDREDDI, MARICAR MARQUEZ, SARA
STRONG, and NATHAN WRIGHT,

Docket No. 10 CV 1535 (SF)(ML)

                                Plaintiffs,

       -against-

MTA LONG ISLAND BUS

                                Defendant.

-------------------------------------------------------------------X

PABLO CRUZ, JOEL STEELE,
and MAUREEN HARTNETT,

                                Plaintiffs,

Docket No. 10 CV 1862 (SF)(ML)

       -against-

NASSAU COUNTY and MTA LONG ISLAND
BUS,

                                Defendant.

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**MARTIN B. SCHNABEL**
Vice President and General Counsel
NEW YORK CITY TRANSIT AUTHORITY
On behalf of MTA Long Island Bus

130 Livingston Street – Room 12th Floor
Brooklyn, New York 11201
(718) 694-3900

Shawn M. Friedman
of Counsel

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I

      THE LEGAL STANDARD APPLICABLE TO THIS
      MOTION ................................................................................................................. 3

      A.    Standard Applicable to Motion to Dismiss ............................................. 3

      B.    Standard Applicable to a Preliminary Injunction ................................. 4

II

      THE ADA CONFERS NO PRIVATE RIGHT OF ACTION
      TO ENFORCE THE PARTICULAR ADA REGULATIONS
      AT ISSUE HERE ................................................................................................... 5

III

      A "REASONABLE MODIFICATION" REQUIREMENT
      HAS NEVER BEEN AN OBLIGATION UNDER TITLE II.B
      OF ADA FOR THE PROVISION OF TRANSPORTATION ........................ 10

      A.    The ADA's Regulatory And Enforcement Framework
           Make Clear That "Reasonable Modification" Is Not
           Applicable To Operation Of Paratransit Services ............................... 12

      B.    Case Law Confirms that DOJ's "Reasonable
           Modification" Rule is Wholly Inapplicable to
           Paratransit Services .................................................................................. 15

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **Page**

BAM Historic District Association v. Koch,
723 F.2d 233 (2d Cir. 1983)..........................................................................................8

Beal v. Stern,
184 F.3d 117 (2d Cir. 1999)..........................................................................................4

Boose v. Tri-County Metropolitan Transportation District of Oregon,
587 F.3d 997 (9th Cir. 2009) ..............................................................................5, 16, 18

Caviezel v. Great Neck Public Schs.,
2010 U.S. Dist. LEXIS 33906 (E.D.N.Y. Apr. 5, 2010) ................................................4

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)..........................................................................................3

County of Nassau, N.Y. v. Leavitt,
524 F.3d 408 (2d Cir. 2008)..........................................................................................4

Disability Rights Council v. Washington Metropolitan Area Transit Authority,
239 F.R.D. 9 (D.D.C. 2006)...........................................................................................7

Disabled in Action v. Southeastern Pennsylvania Transport Authority,
2006 U.S. Dist. LEXIS 84730 .................................................................................6, 7, 8

Feick v. Fleener,
653 F.2d 69 (2d Cir. 1981).............................................................................................4

Ganett Satellite Information Network, Inc. v. Metropolitan Transportation
Authority,
745 F.2d 767 (2d Cir. 1984)...........................................................................................8

Henrietta v. Bloomberg,
331 F.3d 261 (2d Cir. 2003)...........................................................................................5

International Audiotext Network, Inc. v. AT&T Co.,
62 F.3d 69 (3d Cir. 1995)...............................................................................................3

Iverson v. City of Boston,
452 F.3d 94 (1st ............................................................................................................7

Page

Leeds v. Meltz,
  85 F.3d 51 (2d Cir. 1996)..............................................................................3

Lonberg v. City of Riverside,
  571 F.3d 846 (9th Cir. 2009) .......................................................................6

Melton v. Dallas Area Rapid Transit,
  326 F. Supp. 2d 767 (N.D. Tex 2003) ..............................................15, 17, 18

Melton v. Dallas Area Rapid Transit,
  391 F.3d 669 (5th Cir. 2004) ...............................................................15, 16

Olmstead v. Zimring,
  527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999)............................12

Rodriguez v. DeBuono,
  175 F.3d 227 (2d Cir. 1999)..........................................................................4

Rothman v. Gregor,
  220 F.3d 81 (2d Cir. 2000)............................................................................3

Tsombanidis v.Oxford House, Inc.,
  352 F.3d 565 (2d Cir. 2003)..........................................................................5

Wright v. Giuliani,
  230 F.3d 543 (2d Cir. 2000)..........................................................................4

## STATE CASES

2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC,
  No. 00 Civ. 5773 (GEL), 2001 WL. 410074 (S.D.N.Y. Apr. 23, 2001) .......................4

Abrams v. New York City Transit Authority,
  39 N.Y.2d 990 (1976) ...................................................................................8

Jamaica Chamber of Commerce, Inc. v. Metropolitan Transportation Authority,
  608 N.Y.S.2d 758 (Sup. Ct. Queens 1993).......................................................8

LaSalle Bank National Associate v. Citicorp Real Estate, Inc.,
  No. 02 Civ. 7868 (HB), 2003 WL. 21671812 (S.D.N.Y. July 16, 2003) .......................4

Leeds v. Metropolitan Transportation Authority,
  460 N.Y.S.2d 219, 117 Misc. 2d 329 (1st Dept. 1983) ...................................8

Defendant MTA Long Island Bus, respectfully submits this memorandum of law in opposition to the plaintiffs' motions for a preliminary injunction and in support of its cross-motion, pursuant to Rule 12(b)(2), 12(b)(6), and 12(c) of the Federal Rules of Civil Procedure, to dismiss the complaints of the plaintiffs in both captioned matters on the grounds that the plaintiffs fail to state a claim upon which relief can be granted and cannot meet their burden of demonstrating that a preliminary injunction should be issued.

## PRELIMINARY STATEMENT

By this consolidated motion, Defendant MTA Long Island Bus (LIB) seeks dismissal of the complaints in both referenced actions and denial of the separate applications of plaintiffs for a preliminary injunction. Plaintiffs complain about a series of perceived procedural defects, which it is alleged, prevent LIB's implementation of planned service changes to its Able-Ride operation and violate Section 504 of the Rehabilitation Act and the implementing regulations of the Americans with Disabilities Act of 1990 (ADA). In particular, plaintiffs assert that LIB failed to follow public participation requirements and otherwise failed to overcome various purported procedural requirements, which it is claimed, must be met in advance of any service changes to Able-Ride. The fundamental flaw in the arguments proffered by plaintiffs is that plaintiffs have no legally protected interest in the particular regulations which they allege LIB violated. This is because the very regulations the plaintiffs cite to are directed at public entities only and were never intended to and do not, in fact, confer any actionable private

rights.[1]

Plaintiffs alternatively seek "reasonable modifications" to the Able-Ride paratransit service plan to ensure that paratransit eligible individuals are able to obtain service throughout Nassau County, notwithstanding that it is clear that service beyond the ADA mandated core service area is not a requirement of the existing ADA implementing regulations or the presently applicable Able-Ride paratransit service plan.

The MTA and its subsidiaries and affiliates, including LIB, are currently subject to a comprehensive framework of statutory and regulatory requirements relating to their obligations to persons with disabilities. Existing obligations are set forth principally in the statutory and regulatory provisions of ADA Title II, Part B, which Part is applicable to entities providing public transportation services.

Pursuant to Title II, Part B the MTA is obligated to, among other things, provide paratransit, as a transit accommodation for the benefit of individuals who cannot use regular fixed route buses (and subways in the case of New York City). Plaintiffs would impose a "reasonable modification" obligation on LIB that is not based upon ADA Title II, Part B, but is instead derived from the obligations contained in Title II, Part A of ADA, which obligations are applicable to public accommodations generally, but which are expressly not applicable to paratransit providers.

---

[1] It is also true, as demonstrated by the accompanying affidavits of Neil Yellin and Thomas Charles (the two individuals who have run Able-Ride since the MTA takeover in 1995), that the proposed service changes are entirely consistent with the implementing ADA regulations as well as the pertinent Able-Ride service plan. And for this reason alone there can be no legitimate claim that public participation or any other procedural due process requirements are even implicated. The plaintiffs themselves concede that even after the services changed are implemented, Able-Ride will remain compliant with the service mandates of the ADA regulations. They assert instead that the service changes effect a modification of the extant ADA service plan, which, in turn, purportedly trigger certain procedural requirements. This argument fails as a matter of law for the reasons set forth herein (in that there is no private right of action in respect of plan implementation, updates, etc.), but also because the existing plan expressly permits the subject service changes. See generally Yellin Aff.; Thomas Aff.

To require LIB to undertake "reasonable modifications in policies, practices, or

procedures" (which as noted is a concept derived exclusively from Title II, Part A of ADA and

has no general application to public transportation services, including paratransit services) would

impose a duty on LIB well beyond what the ADA implementing regulations permit and, as

explained herein, would also contravene relevant circuit court decisional law, which has

expressly held, under essentially identical circumstances, that no such obligations exist.

## ARGUMENT

### I

### THE LEGAL STANDARD APPLICABLE TO THIS MOTION

#### A.    Standard Applicable to Motion to Dismiss

A proposed claim cannot withstand a motion to dismiss pursuant to Rule 12(b)(6) if a

party can prove no set of facts that would entitle it to relief. International Audiotext Network,

Inc. v. AT&T Co., 62 F.3d 69, 71 (3d Cir. 1995). While a district court ordinarily should accept

as true the allegations of a complaint, it need not accept unreasonable or unsupported inferences

or conclusions of law. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); see also L'Europeenne de

Banque v. La Republica de Venezuela, 700 Supp. 114, 122 (S.D.N.Y. 1988).

On this motion to dismiss, this Court may consider any document referenced in the

pleadings, so long as the document is integral to the pleadings. Chambers v. Time Warner, Inc.,

282 F.3d 147, 153-54 (2d Cir. 2002). In this context, a pleading is deemed to "include . . .

documents that the plaintiffs either possessed or knew about and upon which they relied in

bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

Moreover, where the express terms of agreements contradict the allegations in a pleading,

the agreements control, and the Court need not accept as true the contradictory allegations of the

- 3 -                                                                                    #1267701

pleading. Feick v. Fleener, 653 F.2d 69, 75 (2d Cir. 1981); LaSalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc., No. 02 Civ. 7868 (HB), 2003 WL 21671812, at *1 (S.D.N.Y. July 16, 2003); see also, 2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *9-10 (S.D.N.Y. Apr. 23, 2001).

## B.    Standard Applicable to a Preliminary Injunction

The Second Circuit has held that a party seeking a preliminary injunction generally must show: both irreparable harm in the absence of the injunction and either a likelihood of success on the merits or sufficiently serious questions as to the merits such that there are fair grounds for litigation and that a balance of hardships clearly falls in the moving party's favor. County of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008). However, when a party "seeks a preliminary injunction that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000) (quoting Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999)). In addition, when the injunction, if granted, "will alter rather than maintain the status quo," a moving party must make an additional showing that the likelihood of success on the merits is "clear" or "substantial." Wright, 230 F.3d at 547; Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir. 1999); Caviezel v. Great Neck Pub. Schs., 2010 U.S. Dist. LEXIS 33906, 25-26 (E.D.N.Y. Apr. 5, 2010).

#1267701

II

## THE ADA CONFERS NO PRIVATE RIGHT OF ACTION TO ENFORCE THE PARTICULAR ADA REGULATIONS AT ISSUE HERE

Plaintiffs in both the Cruz and Abrahams actions assert that defendant adopted the non-ADA Able-Ride service changes without "consulting with plaintiffs" or submitting to the Federal Transit Administration (FTA) an update to their paratransit plan and thus allegedly violated a Department of Transportation (DOT) regulation, 49 C.F.R. §37.137, concerning the development of paratransit plans. Cruz ¶¶ 18, 76-77; Abrahams Cplt. ¶¶ 68, 75. Each of these claims should be dismissed for two reasons. First, the ADA does not create a private right of action to enforce the regulations that govern development of paratransit plans.[2] Second, plaintiffs' factual allegations do not amount to violations of DOT's regulations[3].

Pursuant to § 12143 of the ADA, DOT has issued regulations for comparable complementary paratransit service. 49 C.F.R. Part 37, subpart f. Each entity subject to §12143 must develop and submit to the FTA a paratransit plan for how it will comply with the ADA paratransit service criteria. 49 C.F.R. §37.135(a); 49 C.F.R. §37 139. Once approved by the FTA, a paratransit plan, if needed, must be annually updated each January. 49 C.F.R. §

---

[2] Plaintiffs also assert claims under Section 504 of the Rehabilitation Act but these claims must be dismissed for the simple reason that the remedial scheme of the Rehabilitation Act is duplicative of the ADA. Plaintiffs' claims under both Section 504 of the Rehabilitation Act and the ADA are identical, and Section 504 of the Rehabilitation Act and the ADA provide the same protection to plaintiffs and contain coextensive remedies. In addition, the Rehabilitation Act confers no greater substantive rights to disabled riders of paratransit services than the ADA. See Boose v. Tri-County Metropolitan Transportation District of Oregon, 587 F.3d 997 (9th Cir. 2009). Henrietta v. Bloomberg, 331 F.3d 261 (2d Cir. 2003).

[3] Plaintiffs in the Abrahams case additionally assert a claim under the Fair Housing Act (by way of a bare citation to the statute and without further factual or legal support), but this claim is far-fetched at best. The Fair Housing Act, as amended by the Fair Housing Amendments Act, makes it unlawful to discriminate "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). It prohibits governmental entities from implementing housing policies-such as zoning rules or building codes-in a discriminatory manner against persons with disabilities. *Tsombanidis v. Oxford House, Inc.,* 352 F.3d 565, 573 (2d Cir. 2003). But LIB's provision of complementary paratransit service under the ADA is not a "housing policy," and even the most expansive reading of the FHA does not warrant extending FHA coverage to encompass entities, such as LIB, that are not even incidentally involved in the provision of housing.

#1267701

37.135(c). But an entity that "has met and is continuing to meet all requirements for
complementary paratransit service," may instead submit a certification of continued compliance
in lieu of a plan update. 49 C.F.R. § 37.135(c)(1). An entity that does so but then "fall[s] short of
compliance," must immediately notify FTA, and then file a plan update the next following
January. 49 C.F.R. § 37.135(c)(2).

The regulations include specified procedures for the "development" of paratransit plans
including outreach to persons expected to use paratransit service, consultation with individuals
with disabilities, and a public hearing. 49 C.F.R. § 37.137(b). After the FTA approves a
paratransit plan, the regulations require an "ongoing mechanism" for individuals with disabilities
to participate in the development of the annual paratransit plan updates 49 C.F.R. §§ 37.137(c),
37.139(j)(3).

Contending that the non-ADA Able-Ride service changes are a significant revision of the
existing FTA-approved paratransit plan, Cruz Cplt. ¶ 64, Abrahams Cplt. ¶ 68, plaintiffs allege
that defendants violated 49 C.F.R. § 37. 137 by not seeking public participation and failing to
submit an annual update reflecting that change to FTA. We explain below why that allegation is
not so.

But the Court need not reach that issue because the ADA does not confer on these
plaintiffs a private right of action to enforce the paratransit plan development regulation. See
Disabled in Action v. Southeastern Pennsylvania Transp. Auth., 2006 U.S. Dist. LEXIS 84730,
at **101. 116 (E.D. Pa. Nov. 17, 2006), rev'd on other grounds, 539 F.3d 199 (3d Cir. 2008) (no
private right of action under the ADA to enforce DOT regulations proscribing procedure
including public participation for choosing key stations to make accessible); Lonberg v. City of
Riverside, 571 F.3d 846 (9th Cir. 2009) (no private right of action to enforce self-evaluation and

transition plan regulations promulgated under Title II of the ADA because they impose an
obligation beyond what the ADA mandates); Iverson v. City of Boston, 452 F.3d 94 (1st Cir.
2006)(same).[4]

At issue in Disabled in Action was a separate ADA provision, 42 U.S.C § 12147(b),
which requires that public transit entities designate "key stations" to be made readily accessible
to disabled persons. In designating key stations — similar to the requirements for development
of a paratransit plan—DOT's regulations require that public transit entities use a "planning and
public participation process" including consultation with individuals with disabilities both in
identifying key stations and developing a plan to make them accessible. Id. at **99-100. An
advocacy group sued Philadelphia's public transit entity SEPTA alleging that it violated the
ADA by failing to designate two of its busy rail stations as key stations. The court granted
summary judgment dismissing the claim because the ADA did not include a private right of
action to enforce the DOT regulation pertinent to "key station" designation.

The court observed that plaintiff was not actually seeking to enforce the ADA provision
making it discrimination to fail to make designated key stations accessible, but instead the DOT

---

[4] Both the Cruz and Abrahams plaintiffs, in their respective memoranda of law in support of their applications for a
preliminary injunction, cite the district court decision in Disability Rights Council v. Washington Metropolitan Area
Transit Authority, 239 F.R.D. 9 (D.D.C. 2006) as supporting a private right of action to enforce the DOT
regulations cited in their complaints, 49 C.F.R. 37.137(c)(public participation) and 37.139(j)(FTA notification). But
the plaintiffs' reliance on Disability Rights Council is misplaced and they misconstrue its meaning in the context of
the present matter. In Disability Rights Council plaintiffs sued under the ADA, the Rehabilitation Act, and section
1983 alleging that WMATA wasn't offering comparable paratransit service. Citing 49 C.F.R. 37.131(f), plaintiffs
there alleged that WMATA's paratransit service wasn't comparable to its fixed route service because of a pattern and
practice of missed trips, rude customer service, and discourteous drivers. In short, the plaintiffs sued under entirely
separate portions of the implementing regulations within Title II, Part B. This is a distinction with a difference.
There can be no question that an individual has a right to sue under the ADA to redress discrimination. The
question presented here though, is not whether the ADA offers a private right of action generally to redress
discrimination – unquestionably it does. (Disabled Rights Council is an example of just such a case). The question
instead before this court is this: do the DOT regulations confer a personal right allowing individuals, such as
plaintiffs here, to bring a suit to enforce DOT requirements pertinent to paratransit plan development. LIB submits
that no such private right exists, a view confirmed by a plain reading of the regulations themselves, which do not
contain "rights-creating language," and by the decision in Disabled in Action. There is nothing in Disability Rights
Council, or any other case cited by plaintiffs, which alters this analysis.

#1267701

regulations proscribing the process by which the public entity had <u>designated</u> key stations. <u>Id</u>. at *101. In other words, rather than alleging that SEPTA had failed to make the key stations it <u>had</u> already designated accessible (which would have stated a claim under the ADA), the plaintiff merely challenged SEPTA's failure to <u>designate</u> certain stations as "key stations." <u>Id</u>. That, the court noted, required an analysis of whether Congress intended to confer a specific private right of action relative to that regulation. The Court concluded that it did not since the DOT's planning and public participation process regulations were "directed at the public entity...and do not focus on the individual," <u>Id</u>. at *108, and, thus, did not apparently create personal rights enforceable under the ADA. <u>Id</u>. at *107.

The same result follows here. Plaintiffs seek to privately enforce certain procedural requirements of DOT's paratransit plan development regulations. The regulations at issue, however, although they impose procedural obligations on public transit entities in connection with paratransit plan development (including public participation, outreach and consultation), similar to the key station-designation procedural regulations in <u>Disabled in Action</u>, do not construe substantive rights that are privately actionable under the ADA. Indeed, the fundamental flaw in both lawsuits, (at least in respect to their complaints about matters pertinent to paratransit plan development), is that the FTA has sole authority under the ADA for assessing the adequacy of paratransit service plan development and the regulations themselves pertinent to these matters unquestionably are directed at public entities only and, therefore, do not confer any private rights.[5]

_____

[5] Not only is it clear that there can be no private right of action to enforce the ADA regulations which plaintiffs complain LIB has violated, it is likewise clear that, in the absence of such a violation, the Court may not even reach plaintiffs' underlying complaints about MTA's decision-making in respect of the service changes themselves. These decisions, as well as the process leading up to such decisions, are unquestionably beyond the jurisdictional reach of this Court.

#1267701

Should this Court, however, consider the merits of plaintiffs' claims that defendants violated the DOT's regulation proscribing the procedure for developing a paratransit plan, 49 C.F.R. § 37.137, it should dismiss them because no such violation has occurred.

Plaintiffs claims that defendant failed to seek public participation before making the non-ADA Able Ride service changes or to submit an annual plan update reflecting those changes to FTA are based on a faulty premise: that the non-ADA Able Ride service changes amounted to a change in the existing Able-Ride paratransit service plan. But that is not so. As shown by the accompanying affidavits of both Neil Yellin and Thomas Charles (the only two individuals who have run Able-Ride since the MTA takeover in 1995), even after implementation of the proposed service changes, Able-Ride will remain in full compliance with all of the provision of service requirements in the ADA and its implementing regulations, and will likewise continue to meet all of the service-related commitments contained in Able-Ride paratransit service plan. The Able-Ride paratransit service plan itself contemplates adjustments in the manner service is provided outside the ADA mandated core service area in order to ensure sufficient service within the mandated core service area. And the manner in which such adjustments are made are

It is long-recognized that governmental decisions concerning the allocation of public resources, made in connection with the quality and quantity of municipal services, rest exclusively with public officials and the judiciary cannot pre-empt those decisions, absent a violation of a statutory mandate or other regulatory constraint. New York state and federal courts, including the Second Circuit, have held that in matters such as the present judicial intervention is not cognizable. See Gannett Satellite Information Network, Inc. v. Metropolitan Transportation Authority, 745 F.2d 767, 775 n.4 (2d Cir. 1984)(transit authority in better position than courts to establish fee arrangements); BAM Historic Dist. Ass'n v. Koch, 723 F.2d 233, 237 (2d Cir. 1983)(notice and hearing procedures to broaden public participation in government decisions a matter for state and local legislatures).

Indeed, courts applying this rule have repeatedly declined to interfere with decisions of the MTA as well as its affiliate agencies in respect of discretionary matters related to the delivery of transportation services. Abrams v. New York City Transit Authority, 39 N.Y.2d 990 (1976)(judicial intervention into the transit authority's decision making process would entail determination of issues of judgment allocation of resources, and ordering of priorities which are not subject to judicial review); Leeds v. Metropolitan Transportation Authority, 460 N.Y.S.2d 219, 117 Misc.2d 329 (1st Dept. 1983)(explaining that absent a special relationship, performance of governmental services, including operation of transit services, 'those services are not owed to any specific individual and individual relief therefore may not be granted."); Jamaica Chamber of Commerce, Inc. v. Metropolitan Transportation Authority, 608 N.Y.S.2d 758 (Sup. Ct. Queens 1993)("decisions such as where to route buses or whether streets should be on-way or two-way raise issues which are inherently governmental and political and not judicial in nature").

#1267701

discretionary actions by LIB and do not constitute changes in the paratransit service plan itself, nor do they trigger the public participation or FTA-notification provisions of the regulations.

Under the present circumstances, plaintiffs have not and cannot allege a cognizable legal claim because, (1) there is no private right of action to enforce the regulations plaintiffs claim were violated and, (2) there is no legitimate basis to assert that once the service changes are implemented that Able-Ride will not comply with the designated ADA implementing regulations or the subject paratransit service plan.

## III

### A "REASONABLE MODIFICATION" REQUIREMENT HAS NEVER BEEN AN OBLIGATION UNDER TITLE II.B OF ADA FOR THE PROVISION OF TRANSPORTATION

Plaintiffs would, alternatively, impose a "reasonable modification" obligation on Able-ride but imposing such a rule on LIB would go well beyond the scope of existing implementing regulations of the ADA applicable to transportation providers of fixed route and paratransit systems and is not now and has never been an ADA obligation applicable to public transit.

The structure of ADA and existing regulations show that the "reasonable modification" concept is not intended to apply to transportation. Title II has two parts. Under Part A to Title II, which governs public services generally:

> Subject to the provisions of [Title II], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

See 42 U.S.C. § 12132. The purpose of the "reasonable modification" concept is to permit participation by disabled persons in programs, benefits and activities that are available to the general public. Thus, Title II.A of ADA, which addresses government programs generally

- 10 -                                                    #1267701

available to the public or to their employees, (as well as Title III, which addresses services provided to the general public by private entities), requires "reasonable modifications" be made to those programs as necessary to enable disabled members of the public to participate in them.[6]

Title II, Part B of ADA, however, is a separate title for transportation providers. The Title II.B obligation, in fact, goes well beyond the "reasonable accommodation" obligation of Title I and the "reasonable modifications in policies, practices, or procedures" of Title II.A. Unlike all other titles of ADA, Title II.B mandates extraordinary actions to make transportation accessible to people with disabilities – retroactive alterations to fixed route transportation facilities and vehicles, specific alterations of bus, subway and commuter rail service, and the creation of a paratransit system, complete with comprehensive eligibility criteria and service criteria implementing the statutory mandate that the system's service levels must be comparable to mass transit. See 49 C.F.R. §§ 37.121-155.

Therefore, unlike Title II.A, the Title II.B statute and regulations have express transportation service mandates, specifically define what constitutes accessible fixed route transportation, require properties to comply with that accessibility definition, which incorporates both equipment and service mandates, and provide that it is discrimination to fail to comply. See 42 U.S.C. §§ 12141-64; 49 C.F.R. pt. 37, subpts. A-D, G; pt. 38.

With respect to paratransit, all aspects of service provision are prescribed by the regulations, including eligibility and appeal processes, service area and hours of operation, reservation procedures and capacity requirements, required numbers of personal care attendants and guests, even as specific a requirement as an identification card that must be issued to paratransit eligible persons and the information that the card must contain. See 49 C.F.R. pt. 37,

---

[6] Similarly, employers, under Title I, were and are required to make "reasonable accommodations" for otherwise qualified, disabled applicants or employees to allow them to participate in the application process and to perform their jobs.

subpt. F. This detailed regulatory mandate reflects a comprehensive scheme for the provision of
ADA-mandated services. Conspicuously absent from this scheme is any requirement that a mass
transit provider offering paratransit service entertain requests for additional accommodations that
reach beyond the comprehensive service mandates.

## A.   The ADA's Regulatory And Enforcement Framework Make Clear That "Reasonable Modification" Is Not Applicable To Operation Of Paratransit Services.

Congress has allocated the authority to promulgate regulations as between Part A and B
of Title II in the following manner: For Part A, "the Attorney General shall promulgate
regulations in an accessible format that implement this part." See 42 U.S.C. §12314(a). For Part
B, "The Secretary [of Transportation] shall issue final regulations to carry out this section." See
42 U.S.C. §12314(b). Moreover, and dispositive of the issue presented here, the regulations that
are promulgated by the Attorney General for part A "[s]hall not include any matter within the
scope of the Authority of the Secretary of Transportation under section 12143, 12149, or12164
of this title." 42 U.S. C. §12134(a); see also Olmstead v. Zimring, 527 U.S. 581, 591 n.5, 119
S.Ct. 2176, 144 L.Ed.2d 540 (1999)("Congress directed the Secretary of Transportation to issue
regulations implementing the portion of Title II concerning public transportation."). Thus, it was
conceived that regulatory compliance and enforcement activities pertinent to Part A and B of
Title II would be segregable – with the Attorney General with authority for Part A and the
Secretary of Transportation with authority for Part B. The "reasonable modification" mandate,
which exists within the Attorney General's regulations under Part A, is wholly absent in the
Secretary of Transportation's regulations of Part B. Part A, 28. C.F.R § 35.130(b)(7) thus
provides:

#1267701

> A public entity shall make reasonable modifications in policies,
> practices, or procedures when the modifications are necessary to avoid
> discrimination on the basis of disability, unless the public entity can
> demonstrate that making the modifications would fundamentally alter
> the nature of the service program or activity.

By contrast, Part A, 49 C.F.R. §27.7(a) provides:

> No qualified handicapped person shall, solely by reason of his disability,
> be excluded from participation in, be denied the benefits of, or otherwise
> be subjected to discrimination under any program or activity that
> receives federal financial assistance administered by the Department of
> Transportation.

See also 49 C.F.R. § 37.1 to 37.215 (detailing the Secretary of Transportation's regulations in

regards transportation services). Consistent with the foregoing, the Attorney General has

recognized the limits of its enforcement power with respect to public transit and for this reason,

has made clear that matters covered by the regulations promulgated by the Secretary of

Transportation are exempt from its own regulatory mandates under Part A of Title II: "[t]o the

extent that public transportation services, programs, and activities of public entities are covered

by Subtitle B of Title II of ADA (42 U.S.C. §12141) they are not subject to the requirements of

this part." 35 C.F.R. §102 (b). Notably, this provision appears as prefatory language to the

general provisions of Part A, leaving little doubt that the Attorney General never intended that

the regulations contained in Part A of Title II would reach public transportation providers, whose

obligations are set forth elsewhere.

For its part, the Department of Transportation has also recognized the need to elucidate

the scope and reach of the regulatory frameworks promulgated separately by the DOT and DOJ

under Title II. In this regard, the DOT has explained that the DOJ regulations are properly

understood as regulations of general applicability, thereby applicable to the extent they are not

#1267701

inconsistent with the DOT regulations, while the DOT has regulatory authority (exclusive of the

DOJ regulations) over transportation matters.

> Virtually all entities covered by this rule are also covered by the DOJ, either under 28 CFR part 36 as state and local program providers or under 28 CFR part 35 as operators of public accommodations. Both sets of rules apply; one does not override the other. The DOT rules apply only to the entity's transportation facilities, vehicles, or services; the DOJ rules may cover the entity's activities more broadly. For example, if a public entity operates a transit system and a zoo, DOT's coverage would stop at the transit system's edge while the DOJ's rule would cover the zoo as well.

> DOT and DOJ have coordinated their rules and the rules have been drafted to be consistent with one another. Should, in the context of some future situation, there be an apparent inconsistency between the two rules, the DOT rule would control within the sphere of transportation services, facilities and vehicles.

See 49 C.F.R. § Part 37, Appendix D, discussing §37.21 (emphasis added). It thus becomes

evident that within the confines of transportation matters the DOT itself conceives its

enforcement authority as exclusive (while outside the "sphere of transportation" the prescriptions

laid out by the DOJ under Part A of Title II are to be considered rules of general application that

apply broadly to public accommodations), and the DOJ (by adoption of rule 35 C.F.R. §102 (b))

has concurred.

Thus, notwithstanding plaintiffs' present efforts to seek judicial importation of the

"reasonable modification" rule of Part A, Title II, into Part B, Title II there is nothing in the

implementing regulations which would warrant such action. Indeed, as noted above, the DOJ

has itself recognized the limits of its own enforcement authority, and has expressly stated that

none of the Title II.A regulations (thus, including the "reasonable modification" requirement)

applies to transportation. See 28 C.F.R. § 35.102(b). For this reason alone, the injunctive relief

sought by the plaintiffs has no regulatory basis and should be summarily denied.

- 14 -                                                                       #1267701

## B. Case Law Confirms that DOJ's "Reasonable Modification" Rule is Wholly Inapplicable to Paratransit Services

Not only do the ADA implementing regulations themselves make clear that the "reasonable modification" rule of Part A, Title II is not applicable to entities providing public transportation, but recent circuit court decisional law confirms this view. In this regard, both of the circuit courts that have reached the question of whether public entities are required to make "reasonable modifications" to their paratransit services have concluded that the ADA's implementing regulations impose no such requirement.

The Fifth Circuit, in Melton v. Dallas Area Rapid Transit, 391 F.3d 669 (5th Cir. 2004), reviewed the same statutory and regulatory framework analyzed above and affirmed a district court's holding that neither the ADA nor the Rehabilitation Act required Dallas Area Rapid Transit ("DART"), to modify its paratransit plan to accommodate the plaintiffs-appellants' request that DART modify its policies to allow a more permissive pick-up and drop-off policy.

The facts of Melton are straightforward. Between 1992 and 1999, DART's paratransit service had been picking up and dropping off the plaintiffs' son in an alley behind his parent's home but then discontinued this practice citing safety concerns and, thereafter, agreed to pick him up only alongside the street in the front of the Melton's home. The son, who used a wheelchair and needed the assistance of a personal care attendant, was unable to reach the street by himself and, because of a steep slope in the front yard, his parents were also prevented from taking their son to the street where he could be picked up. The Meltons argued that as a consequence of DART's change of pick-up / drop-off policy, their son was being denied access to DART's paratransit service. The plaintiffs further alleged that DART's failure to modify its paratransit plan to accommodate their son constituted discrimination under the ADA and the Rehabilitation Act. See generally Melton v. Dallas Area Rapid Transit, 326 F.Supp.2d 767

#1267701

(N.D. Tex 2003). In affirming the district court's grant of summary judgment to DART, the

Fifth Circuit concluded that the "reasonable modification" provisions of Part A of Title II,

governing public accommodations generally, are not applicable to paratransit services operating

under Part B of Title II. The Court explained as follows:

> "Because paratransit service is meant to act as the disability complement
> to established fixed route transportation services, this comprehensive
> regulatory scheme signals that no extra-plan modification is statutorily or
> otherwise required by a public entity, when the public entity is properly
> operating under a FTA-approved plan. The FTA plan is itself the
> accommodation to the disabled by the public transportation entity. It is
> the violation of the plan itself that constitutes the prohibited
> discrimination under Title II, not the failure to modify the plan to address
> particularized complaints.
>
> \*      \*      \*
>
> Furthermore, even if the Secretary of Transportation only has the
> authority to promulgate regulations relating directly to transportation, the
> reasonable modification requested by the Meltons relates specifically to
> the operation of DART's service and is, therefore, exempt from the
> Attorney General's regulations in 28 C.F.R. part 35. To the point, the
> ADA's implementing regulations impose no requirement on DART to
> make reasonable modifications to its paratransit service."

Melton, 391 F.3d at 675.

More recently, the Ninth Circuit, in Boose v. Tri-Met Metropolitan Transportation

District of Oregon, 587 F.3d 997 (9th Cir. Or. 2009), faced the same question: whether a public

entity operating paratransit services under Part B of Title II, was required to make "reasonable

modifications" to its paratransit plan and services to accommodate paratransit customers. In

Boose, the plaintiff sought an accommodation whereby she would be entitled to an enhanced

level of service that would enable her to choose the type of vehicle Tri-Met used to transport her.

The Ninth Circuit framed the matter simply: "[t]he sole issue presented in this appeal is

whether under the ADA and the Rehabilitation Act [Tri-Met] must accommodate Boose pursuant

to the Department of Justice ("DOJ") regulations requiring public entities to make reasonable

#1267701

modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. See 28 C.F.R. § 35.130(b)(7)." Id. at 1000. Analyzing the same statutory and regulatory authorities relied upon by the Fifth Circuit in Melton and above, the Ninth Circuit concluded that the Attorney General's "reasonable modification" mandate had no application to transit providers of paratransit service. Indeed, similar to the Fifth Circuit, the Ninth Circuit refused to import the Attorney General's rule in respect of "reasonable modifications," noting, "[o]nly the Secretary of Transportation can make rules 'determining the level of services to be required' for paratransit.'" Id. at 10001. (citing 42 U.S.C. § 12143(c)(3)). The Court further explained:

> "If the Attorney General cannot make rules about scheduling paratransit trips by vehicle type, then neither can he make rules that effectively require paratransit systems to schedule trips by vehicle type. Application of the DOJ's reasonable modification regulation to Tri-Met in this instances would do just that, in violation of the statute's enabling statute. See id. § 12134(a). We decline to impose such a requirement on Tri-Met that would upset the balance of authority that Congress has carefully allocated between the Attorney General and Secretary of Transportation. Consequently, we conclude that the DOJ's reasonable modification regulation does not and cannot apply by its own independent source."

Id. at 1002.

Thus, in considering and ultimately deciding the identical issue presented here based upon analysis of the same statutory and regulatory requirements, both the Fifth and Ninth Circuits determined that DOJ's "reasonable modification" requirement may not be incorporated by reference into the DOT regulations. The analysis of these courts of the essentially identical issues raised here effectively compels both the denial of the injunctive relief sought herein and the dismissal of the complaints. Indeed, to the extent that any factual distinction could

- 17 -

#1267701

potentially be drawn between the above cases and the present case, such distinction militates even more strongly in favor of dismissal of the present action. In both Melton and Boose, the "reasonable modifications" unsuccessfully sought by the plaintiffs at least pertained to regulations that were silent on the particular provision of service question before the courts (the origin –to-destination service provisions of 49 CFR § 37.129 in Melton did not address whether origin-to-destination service contemplated exact drop-off locations, and the trip scheduling provisions of 49 C.F.R §37.131(b)(2) in Boose makes no mention of the paratransit vehicle type); here, by contrast, plaintiffs seek a "reasonable modification" with respect to "service area" coverage matters that are already governed by comprehensive directives (See 49 CFR § 37.131(a); 49 C.F.R. § Part 37, Appendix D, discussing §37.131(a), including diagrams and extensive commentary). Under these circumstances, there can be no question that the Secretary of Transportation has made rules that leave little room for additional interpretation, clarification or modification. More to the point, though, should this court impose a "reasonable modification" to expand the paratransit service area beyond the ¾ mile corridors required by the regulations, the result would effect a fundamental change in the nature of the paratransit service mandate that the DOJ or DOT could hardly have contemplated or intended.

In the provision of transportation, unlike government programs that apply to public accommodations generally, the service obligations specified in 49 C.F.R. Parts 37 and 38 control. Disabled persons who cannot use "accessible" (as defined by ADA and DOT regulations) fixed route transit are eligible for paratransit. 42 U.S.C. § 12143(c)(1); 49 C.F.R. § 37.123(e)(1) and (3). The law is clear that persons who cannot use accessible fixed route service or ADA-defined paratransit must find transportation through other means (usually through social programs that are designed and government-funded to meet the special needs of the clients they

#1267701

serve). No provision of the ADA obligates public transit providers to provide transportation to every individual with a disability "by any means," which is the effective mandate the plaintiffs seek to impose here.

## CONCLUSION

For the foregoing reasons, MTA Long Island Bus respectfully requests that the court deny plaintiffs' requests for a preliminary injunction and dismiss their complaints for failure to state a claim upon which relief can be granted.

Dated:   Brooklyn, New York
         May 7, 2010

**MARTIN B. SCHNABEL**
Vice President and General Counsel
New York City Transit Authority
*Attorney for Defendant*
*MTA Long Island Bus*
130 Livingston Street – 12ᵗʰ Floor
Brooklyn, New York 11201
718.694.3900

By:   _____

Shawn M. Friedman (SF 1772)

*Of Counsel:*
Peter Sistrom
Helene Fromm

#1267701