UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

DANNY ABRAHAMS, ANTHONY
CELARDO, KEVIN CHRISTMAN,
LAUREN EPSTEIN, MERYL
JACKELOW, EVAN SKIDMORE,
DAVID TINDAL, LEE WOLBROM,
JOSE DELEON, TRACEY GILBERT,
VISHNU KONDREDDI, MARICAR
MARQUEZ, SARA STRONG, and
NATHAN WRIGHT,

                                                    DOCKET NO.
                                                    CV 10-1535 (SJF)(ARL)


                    Plaintiffs

        -against-

MTA LONG ISLAND BUS,

                    Defendants

---------------------------------------------------------------X

**MEMORANDUM OF LAW FOR PLAINTIFFS IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO MOTION TO DISMISS**


                                MORITT HOCK HAMROFF & HOROWITZ LLP
                                Attorneys for Plaintiffs
                                400 Garden City Plaza
                                Garden City, New York 11530
                                (516) 873-2000

## TABLE OF CONTENTS

Introduction…………………………………………………………………………...1

Relevant Statutes and Regulations……………………………………………………5

    I.  The Americans With Disabilities Act…………………………………………...5

        A. Introduction…………………………………………………………...5

        B. General Provisions of Title II of the ADA…………………………...5

        C. Paratransit Services and Title II of the ADA………………………..6

        D. Paratransit Regulations Enacted Pursuant to
           42 U.S.C. §12143(c)……………………………………….................7

Facts…………………………………………………………………………………8

    I. Introduction…………………………………………………………………...9

    II. The Accessible Transportation Oversight Committee (ATOC)
       January Meeting……………………………………………………………9

    III. Notice of the Public Hearing………………………………….…………….9

    IV. The Public Hearing………………………………………………….......11

    V.  ATOC meeting held the day before paratransit cuts are
       announced and the March 10, 2010 notice to Able-Ride users……………12

    VI. The April 22, 2010 Public Information Session…………………….......13

POINT I-

    PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION UNDER
    BOTH THE PARATRANSIT SECTION OF TITLE II OF THE
    ADA AND THE REGULATIONS ISSUED PURSUANT TO
    THAT STATUTE……………………………………………………...14

POINT II-

    THE PARATRANSIT STATUTE AND ACCOMPANYING
    REGULATIONS ARE APPLICABLE HERE………………………………..20

POINT III-

    DEFENDANT VIOLATED BOTH THE PARATRANSIT SECTION
OF THE ADA AND ITS REGULATIONS IN FAILING TO SEEK
PUBLIC PARTICIPATION AND COMMENT, IN FAILING TO CONSULT
WITH INDIVIDUALS WITH DISABILITIES, AND IN FAILING TO HOLD A
PUBLIC HEARING PRIOR TO ELIMINATING NINE PER CENT OF ALL
ABLE-RIDE SERVICE AND 100 PER CENT OF ALL ABLE-RIDE
SERVICE IN CERTAIN AREAS OF NASSAU COUNTY............................22

Conclusion......................................................................................... 25

## TABLE OF AUTHORITIES

## TABLE OF CASES

Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901 (6th Cir. 2004).......15

Alexander v. Sandoval, 532 U.S. 275 (2001)..................................................15

Anderson v. Rochester-Genesee Regional Transportation Authority,
    337 F.3d 201 (2d Cir. 2003)...........................................................16, 19

Barnes v. Gorman, 536 U.S. 181 (2002)....................................................6, 16

Disability Rights Council v. Washington Metropolitan Transit Authority,
    239 F.R.D. 9 (D.D.C. 2006)...........................................................16, 19

Disabled in Action v. Southeastern Pennsylvania Transp. Auth.,
    2006 U.S. Dist LEXIS 84730 (E.D. Pa. 2006)..........................................18

Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003)....................................5

Hertz Corp. v. Friend, --U.S.--, 130 S.Ct. 1181 (2010)....................................16

Iverson v. City of Boston, 452 F.3d 94 (1st Cir. 2006)..................................15, 18

Keirnan v. Utah Transit Authority, 339 F.3d 1217 (10th Cir. 2003)........................3

Liberty Resources, Inc. v. Southeastern Pennsylvania Transportation Authority,
    155 F.Supp.2d 242 (E.D. Pa. 2001)....................................................16

Loeffler v. Staten Island University Hospital, 582 F.3d 268 (2d Cir. 2009)..................5

Lonberg v. City of Riverside, 571 F.3d 846 (9th Cir. 2009)...............................18

Martin v. Metropolitan Atlanta Rapid Transit Authority, 225 F.Supp.2d 1362
    (N.D. Ga. 2002).......................................................................16

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950).........................24

Oxford House v. Town of Babylon,  819 F.Supp.1179 (E.D.N.Y. 1993).......................2

Stamm v. New York City Transit Authority, 2006 WL 1027142 (E.D.N.Y. 2006).....15, 17

Tsombanidis v. West Haven Fire Department, 352 F.3d 565 (2d Cir. 2003)..................2

## **TABLE OF STATUTES AND REGULATIONS**

29 U.S.C. §794a…………………………………………………………..………6, 16, 17

42 U.S.C. §2000d………………………………………………………………6, 16, 17

42 U.S.C. §3604……………………………………………………………………….2

42 U.S.C. §12101……………………………………………………………………...5

42 U.S.C. §12132…………………………………………………………2, 5, 6, 16, 17

42 U.S.C. §12133…………………………………………………………….6, 16, 17

42 U.S.C. §12143…………………………………………………………………passim

F.R.C.P. Rule 12(h)(3)…………………………………………………..……   16, 20

49 C.F.R. §37.1………………………………………………………………………15

49 C.F.R. §37.131……………………………………………………………………19

49 C.F.R. §37.135……………………………………………………………………21

49 C.F.R. §37.137………………………………………………………….…..passim

## INTRODUCTION

As stated in the affidavit of Thomas J. Charles, the defendant's Vice President of the Paratransit Division, defendant plans to eliminate 9% of the Able-Ride paratransit service in Nassau County.  Charles affidavit, par. 25; Exhibit 5 to Charles Affidavit (Memorandum of Joseph J. Smith dated March 19, 2010, p. 2.)   The plans would concededly eliminate 100% of Able-Ride service in certain areas of Nassau County.[1]  Mr. Charles concedes in his affidavit that "it was . . . recognized that the service changes would create hardship for Able-Ride customers who live and work in the affected areas."  Charles affidavit, par. 29.

Plaintiffs commenced this action challenging the defendant's unilateral decision to eliminate 9% of its Able-Ride service (and 100% of Able-Ride service in certain areas) and create a hardship for the affected Able-Ride customers as being violative of the section of Title II of the Americans With Disabilities Act (ADA) that governs paratransit services (42 U.S.C. §12143) and the regulations issued pursuant to that section.   In particular, this action and the previously submitted papers demonstrate that defendant violated the section of the ADA that governs paratransit services and the regulations issued pursuant to that section that require "public participation" with regard to changes in paratransit service.  See 42 U.S.C. §12143(c)(6) and (7) and 49 C.F.R. §37.137 (regulations issued based on that statute).

With regard to the plaintiffs in this action in this action, defendant makes three arguments in connection to its motion to dismiss[2] and its opposition to plaintiffs' motion for a preliminary injunction:  (a) plaintiffs allegedly do not have a private right of action based upon the

---

[1] Although paragraph 26 of the Charles affidavit states that a map which highlights the areas that are affected by the service cuts is attached as Exhibit 4 to his affidavit, such a map is not attached to his affidavit.  Defendant has still, at this late date and over one month after the proposed cuts were scheduled to take effect, failed to provide a map to anyone that highlights the areas that would be affected by the service cuts and has yet to definitively define the areas of Nassau County that would be losing Able-Ride service.

[2] As plaintiffs had to be people with disabilities in order to be certified for Able-Ride and are all certified Able-Ride customers, defendant wisely chose not to challenge the plaintiffs' standing to bring this action or their status as people with disabilities under the ADA.

regulations issued pursuant to 42 U.S.C. §12143,[3] (b) that even if the plaintiffs have a private

right of action, the statute and the regulations issued under that statute purportedly do not apply

to the circumstances involved here and (c) that even if the plaintiffs have a private right of action

and the statute and the regulations do apply to the circumstances involved here, defendant's

actions allegedly complied with the statute and the regulations.[4]

Defendant is wrong on all of its arguments.   The language of the paratransit statute (42

U.S.C. §12143) and the regulations issued pursuant to that statute demonstrate that Congress

intended that people with disabilities like the plaintiffs have the right to bring a private right of

action under both the paratransit statute and the regulations issued pursuant to that statute.   The

Second Circuit has implicitly held that plaintiffs have a private right of action under both the

paratransit statute and the regulations issued pursuant to that statute, and the only cases cited by

the defendant in its memorandum involve different statutes and regulations not relevant here.

Considering the language of the paratransit statute and the regulations issued pursuant to it

and the concessions made by Mr. Charles regarding the severity of the proposed Able-Ride

service elimination, it is clear that the "public participation" section of the paratransit statute (42

U.S.C. §12143(c)(6) and (7) and its regulations (49 C.F.R. §137.37) are applicable here.

---

[3] Defendant correctly concedes at p. 7, fn. 4 of its memorandum of law that plaintiffs have a private right of action under Title II of the ADA and that the issue is whether plaintiffs have a private right of action under the regulations issued based on a section of Title II of the ADA.

[4] Most of defendant's memorandum of law is addressed to the "reasonable modification" arguments that were raised only in the companion Cruz action.  As plaintiffs here did not raise a "reasonable modification" argument, plaintiffs will leave the defense of that issue to the plaintiffs in the Cruz action.

As noted by defendant at p. 5, fn. 3 of its memorandum of law, plaintiffs here also raised claims under the Federal Fair Housing Act that the percentage of defendant's budget cuts in the Able-Ride system as compared to the percentage of defendant's budget cuts in Long Island Bus as a whole have a disproportionate impact on people with disabilities and plaintiff's ability to live in places of their choice in violation of the Fair Housing Act.  See Affidavit of Robert L. Schonfeld sworn to on April 22, 2010, Docket Entry No. 8, pars. 65-70; 42 U.S.C. §3604(f)(2), see also, Tsombanidis v. West Haven Fire Department, 352 F.3d 565, 574-75 (2d Cir. 2003); Oxford House v. Town of Babylon, 819 F.Supp. 1179, 1182-85 (E.D.N.Y. 1993).  Plaintiffs believe that these allegations are sufficient to withstand defendant's motion to dismiss on this ground.  However, plaintiffs will not rely on this ground with regard to their motion for a preliminary injunction.

Finally, defendant's actions under the "public participation" section of both the paratransit section of the ADA and the regulations issued pursuant to it were woefully short of those required by that section and its regulations. Although defendant submitted an affidavit from Mr. Charles, that affidavit fails to rebut any of the allegations in the previous affidavit of Robert L. Schonfeld sworn to on April 22, 2010 and the accompanying exhibits (Docket Entry No. 8) demonstrating that defendant failed to seek public participation as required by the ADA with regard to the proposed service elimination before it was approved. Indeed, the record demonstrates that the defendant deliberately sought to avoid any public participation with regard to the service elimination and its unilateral decision to make the elimination without public participation is in violation of both the paratransit section of the ADA and the regulations enacted pursuant to that section.

Therefore, as plaintiffs' action states a cause of action, defendant's motion to dismiss should be denied. Additionally, plaintiffs' motion for a preliminary injunction should be granted. Defendant does not dispute that plaintiffs have demonstrated irreparable harm if the service elimination is implemented and Mr. Charles admits that the cuts would cause a "hardship" for some people with disabilities. See, e.g., Keirnan v. Utah Transit Authority, 339 F.3d 1217, 1220 (10th Cir. 2003) (reduction of transportation to person with disability considered irreparable harm where plaintiff would lose opportunity to attend religious services and medical appointments.) As will be discussed throughout this brief, plaintiffs will be able to demonstrate a likelihood of success on the merits. As plaintiffs can demonstrate a likelihood of success on the merits and irreparable harm, a preliminary injunction should be granted against the defendant

from implementing its service elimination prior to its compliance with the public participation section of the ADA relevant to paratransit services and the regulations enacted pursuant to it.[5]

Finally, this is not an action where plaintiffs are seeking to involve the court in the management of paratransit services in Nassau County.[6]   This is also not an action where plaintiffs are engaged in some sort of intellectual discussion aimed at delaying the elimination of service.  Rather, plaintiffs are seeking the participation to which they are entitled under the ADA and its regulations upon the anticipation that defendant will listen to their ideas and look for another way to implement any necessary budget cuts that will reduce or lessen the "hardship" that Mr. Charles concedes will be created for some Able-Ride customers if the proposed Able-Ride service eliminations are implemented.   Having made changes in its proposed service cuts on a Long Island Bus route after public comments at a public hearing, the defendant has demonstrated that it does listen to public comments.   See Exhibit G to Affidavit of Robert L. Schonfeld sworn to on April 22, 2010 (Docket Entry No. 8)   (Memorandum from Joseph J. Smith, President of Long Island Bus dated March 19, 2010 stating that defendant made modifications to the cuts proposed for the South Freeport Loop after comments at the public hearing.)

---

[5] At page 4 of its memorandum of law, defendant outlines the standards for a preliminary injunction in the Second Circuit. As defendant is a public authority, plaintiffs would agree with defendant that plaintiffs must demonstrate a likelihood of success on the merits rather than merely serious questions as to the merits such that there are fair grounds for litigation. However, as plaintiffs are seeking to maintain the status quo (the Able-Ride service as it presently exists) rather than alter the status quo, plaintiffs are not required to adhere to the more rigorous "clear" or "substantial" likelihood of success applicable to preliminary injunction motions seeking to alter the status quo. In any event, plaintiffs here can meet either the "likelihood of success" standard or the "clear" or "substantial" likelihood of success standard.

[6] Prior to this case being transferred to Your Honor from Judge Seybert, defendant filed a letter relying upon a claim that this case should be dismissed on the ground that it raises non-justiciable issues. Docket Entry No. 10. In its memorandum of law on its motion to dismiss, defendant relegates this argument to a footnote at the bottom of page 9 of its memorandum. Suffice it to say that as this action is one that challenges defendant's failure to follow the "public participation" section of the ADA and its regulations rather than defendant's right to make changes after following the ADA and the accompanying regulations, this is an action challenging the illegality of defendant's conduct rather than a discretionary act and thus is justiciable here.

## RELEVANT STATUTES AND REGULATIONS

### I. The Americans With Disabilities Act.

#### A. Introduction

The ADA was enacted in 1990 to address several areas of discrimination against persons with disabilities. Those areas are principally employment (Title I of the ADA); public services (Title II of the ADA) and public accommodations and services operated by private entities. (Title III of the ADA). As stated in the preamble to the ADA, the purpose of the ADA is "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong consistent enforceable standards addressing discrimination against individuals with disabilities;…and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. §12101(b). Courts have consistently held that the ADA must be construed broadly to effectuate its remedial purposes. See, e.g., Loeffler v. Staten Island University Hospital, 582 F.3d 268, 287 (2d Cir. 2009); Henrietta D. v. Bloomberg, 331 F.3d 261, 279 (2d Cir. 2003).

#### B. General Provisions of Title II of the ADA.

As the paratransit services at issue here are a public service, it is undisputed that Title II of the ADA is the applicable portion of the ADA here.

In Part A of Title II, the general sections of Title II, discrimination is defined as follows (42 U.S.C. §12132):

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

With regard to enforcement of the ADA against the above definition of discrimination, 42 U.S.C. §12133 states that "the remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this Title." 29 U.S.C. §794a(2) states that "the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. §2000d et seq] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." A private right of action can be maintained under 42 U.S.C.A. §2000d against the provider of public services like the defendant. Barnes v. Gorman, 536 U.S. 181, 185 (2002).

### C. Paratransit Services and Title II of the ADA.

42 U.S.C. §12143 is the section of Title II of the ADA relevant to the provision of paratransit services as a public service. 42 U.S.C. §12143(a) states as a general rule:

> It shall be considered discrimination for purposes of section 12132 of this title and section 794 of Title 29 for a public entity which operates a fixed route system… to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities…

42 U.S.C. §12143(b) requires the Secretary of Transportation to issue regulations to carry out this section, and 42 U.S.C. 12143(c) states the required content of those regulations. 42 U.S.C. §12143(c)(6), labeled "public participation," states as follows:

> The regulations issued under this section shall require that each public entity which operates a fixed route system hold a public hearing, provide an opportunity for public comment, and consult individuals with disabilities in preparing its plan under paragraph (7).

42 U.S.C. §12143(c)(7), labeled "plans" states as follows:

> The regulations issued under this section shall require that each public entity which operates a fixed route system-
> (A) within 18 months after July 26, 1990, submit to the Secretary, and commence implementation of, a plan for providing paratransit and other special transportation services, which meets the requirements of this section; and
> (b) on an annual basis thereafter, submit to the Secretary, and commence implementation of, a plan for providing such services.

42 U.S.C. §12143(e)(1) defines the term "discrimination" as used above at 42 U.S.C. §12143(a) as "a failure of a public entity to which the regulations issued under this section apply to submit, or commence implementation of, a plan in accordance with subsections (c)(6) and (c)(7) of this section."

42 U.S.C. §12143(f)(1) states that nothing in 42 U.S.C. §12143 prevents a public entity from providing paratransit services at a level greater than that required by the section.

### D.  Paratransit Regulations Enacted Pursuant to 42 U.S.C. §12143(c).

The relevant paratransit regulation issued pursuant to 42 U.S.C. §12143 here is 49 C.F.R. §37.137 entitled "Paratransit plan development."  49 C.F.R. §37.137(b), which is labeled "public participation", states as follows:

> (b) Public participation.  Each submitting entry shall ensure public participation in the development of its paratransit plan, including at least the following:
>
> (1) Outreach.  Each submitting entity shall solicit participation in the development of its plan by the widest range of persons anticipated to use its paratransit service.  Each entity shall develop contacts, mailing lists, and other appropriate means for notification of opportunities to participate in the development of the paratransit plan.
>
> (2) Consultation with individuals with disabilities.  Each entity shall contact individuals with disabilities and groups representing them in the community.  Consultation shall begin at an early stage in the plan development and should involve persons with disabilities in all phases of plan development.  All documents and other information concerning the planning procedure and the provision of service shall be available, upon request, to members of the public, except where disclosure would be an unwarranted invasion of personal privacy.

(3) Opportunity for public comment.  The submitting entity shall make its plan available for review before the plan is finalized.  In making the plan available for public review, the entity shall ensure that the plan is available upon request in accessible formats.

(4) Public hearing.  The entity shall sponsor at a minimum one public hearing and shall provide adequate notice of the hearing, including advertisement in appropriate media, such as newspapers of general and special interest circulation and radio announcements . . .

(c) Ongoing requirement.  The entity shall create an ongoing mechanism for the participation of individuals with disabilities in the continued development and assessment of services to persons with disabilities.  This includes, but is not limited to, the development of the initial plan, any request for an undue financial burden waiver, and each annual submission.

## FACTS

### I.  Introduction

This portion of the memorandum of law will outline the relevant facts with regard to defendant's actions with regard to the "public participation" section of 42 U.S.C. §12143 and the regulations enacted pursuant to that statute.  It will largely be based upon the documents attached to the previous affidavit of Robert L. Schonfeld sworn to on April 22, 2010, that is Docket Entry No. 8.  Although Mr. Charles has submitted an affidavit, that affidavit for the most part does not refute statements made in the previous affidavit of Robert L. Schonfeld and the exhibits attached thereto.

Mr. Charles recognized that the service changes would create hardship and that a "series of steps" was necessary to inform consumers of those changes.  Charles Affidavit, par. 29.  However, those "steps" did not in any respect constitute the "public participation" required under the ADA and its regulations.

## II. The Accessible Transportation Oversight Committee (ATOC) January Meeting.

There is a committee of people with disabilities and people who use Able-Ride known as the "Accessible Transportation Oversight Committee." (ATOC).[7]  ATOC[8] met on January 12, 2010, and defendant's counsel provided the agenda notes for the meeting, which were drafted by the defendant.

The agenda notes for that meeting regarding service cuts states as follows:  (Exhibit B to Robert L. Schonfeld Affidavit of April 22, 2010, p. 2):  "What service cuts and changes will take place?  We will have more information after the March hearings.  The posters with the hearing dates will be made available February 9th."[9]

## III. Notice of the Public Hearing.

Posters with the hearing dates were then placed in Able-Ride vehicles.  The poster as provided by defendant's counsel (Exhibit C to Robert L. Schonfeld Affidavit of April 22, 2010). indicated in small print that the public hearing in Nassau County was to be held at the Chateau Briand restaurant in Carle Place on Monday, March 1, 2010.

While the poster notes that a hearing was to be held in changes in the levels of service of "New York City Transit, the Manhattan and Bronx Surface Transit Operating Authority, MTA Staten Island Railway, MTA Long Island Railroad, MTA Bridges and Tunnels, MTA Long Island Bus, and MTA Bus," the poster specifically notes that "other service-related changes are

---

[7] The Affidavit of Mr. Charles makes reference to a memo outlining service changes being provided to the Long Island Committee members of the MTA Board.  Charles Affidavit, par. 30.  That memo being provided to the Long Island Committee members of the MTA Board does not in any respect constitute compliance with the public participation requirements under the paratransit section of the ADA and its regulations.

[8] As stated in the attached affidavit of Therese Brezinzski, a member of the ATOC and the Director of Advocacy and Community Policy for the Long Island Center for Independent Living, Inc., the members of ATOC are not responsible for communicating what transpires at ATOC meetings with the rest of the "disability community."

[9] Therefore, the minutes of the January 12, 2010 ATOC as drafted by the defendant do not support the statement of Mr. Charles made at paragraph 31 of his affidavit that "On January 12, 2010…. The Accessible Transportation Oversight Committee… met to discuss the service changes and review a draft of the letter that was to be sent to every Able-Ride customer describing the nature of the service changes."

proposed that may also affect the operation and general provision of service of subway, bus and rail lines, and the paratransit services of Access-A-Ride and Able-Ride.  Although these proposed changes do not require public hearing, they are described in informational material available on the MTA website."

In stating that no public hearing was required for the Able-Ride changes, the poster left the impression that the Able-Ride changes were not to be considered at the scheduled public hearing.  In any event, for one to understand the Able-Ride changes, one had to look for "informational material available on the MTA website" without the poster explaining where they could be found on the MTA website.   The poster assumed that all Able-Ride users had access to the MTA website or were computer literate or could navigate the MTA website which was noted at the January 12, 2010 ATOC meeting as being confusing and at which MTA admitted was difficult to read.

As for the information which was on the MTA website, defendant's counsel produced the document that was referred to in the poster and was attached as Exhibit E to the aforementioned Robert L. Schonfeld affidavit of April 22, 2010.  The documents may have been in pdf format which cannot be read by blind and visually impaired customers who use screen readers.

The document only stated that the proposed plan was to "eliminate service to geographic areas not required by ADA to be covered ("non-ADA trips")."  In other words, in order to figure out whether one was affected by the proposed Able-Ride service elimination, an Able-Ride user would have to:

(a) know where to find the ADA and its regulations and be able to access those laws.

(b) understand those laws and

(c) once having accessed and understood the laws, consult a bus map to see where they and their destinations are in proximity to fixed bus routes.

Since the bulk of the service changes were apparently intended for the Oyster Bay, Bayville and Syosset[10] areas, there was no reason why such notice should not have been provided in the poster or in the website material connected to the poster as they were in the March 10, 2010 letter informing Able-Ride users of the areas that would be most affected by the proposed service changes.  Exhibit J to Robert L. Schonfeld Affidavit of April 22, 2010.  And since defendant knew the addresses of Able-Ride users, there was no reason why defendant could not have contacted the Able-Ride users directly about the public hearing with specifics on what and where the Able-Ride changes were going to be rather than the convoluted notice system used by the defendant that was calculated to ensure that Able-Ride users **not** attend the public hearing and **not** understand the nature of the proposed Able-Ride cuts prior to those cuts being made official.

### IV.  The Public Hearing.

The public hearing was held at the Chateau Briand on March 1st.  The transcript is attached as Exhibit F to the Robert L. Schonfeld Affidavit of April 22, 2010.  At the outset of the hearing, defendant's hearing officer Christopher Boylan noted that the hearing  "will provide the public with the opportunity to comment on proposed changes to rail, bus and subway services, the student MetroCard discounted fares and the Rockaway/Broad Channel resident rebate."

---

[10] Plaintiffs (two of whom live in Syosset), and undoubtedly the plaintiffs in the companion action who use the Syosset Dialysis Center, would take issue with Mr. Charles' representation at paragraph 27 of his affidavit that Syosset, a community situated on two major east-west highways crossing the middle of Nassau County (the Long Island Expressway and Jericho Turnpike/Route 25) is "in the far reaches of Nassau County." Part of the problem here is that neither defendant nor Mr. Charles appear to be that familiar with Nassau County and the services used by people with disabilities in Nassau County, an issue which could have been rectified if defendant had sought public participation from people with disabilities living in Nassau County.

Exhibit F, p. 6.  Mr. Boylan also noted that "other service adjustments are proposed that do not require a public hearing but may affect . . . paratransit service."  <u>Id.</u>

Many people came to the public hearing to protest various cuts.  Unlike persons with disabilities who were not given explicit information as to where the service cuts would occur, non-disabled persons were given such information about their railroad or bus lines, knew where the cuts were to occur, and were so alerted so that they could come to the hearing to make their comments heard.  For example, a Sandy Portnoy was present at the hearing to protest cuts to the Port Washington Long Island Railroad line.  Exhibit F, pp. 17-20.

Only two Able-Ride users attended the hearing (Exhibit F, pp. 59-62 and 67-73) and the testimony of one of them (Lynette Perez) indicated the inadequacy of the notice provided by defendant to Able-Ride users of the proposed cuts.  The testimony of neither Able-Ride user indicated that they understood the proposed service changes proposed for Able-Ride, and as stated in the previous affidavit of Therese Brezinzski of the ATOC, she was under the impression that the proposed Able-Ride cuts were not going to be considered at the proposed hearing.

Statements made by some non-disabled riders at the public hearing seemed to have swayed defendant to rescind some of the cuts in service for them (Exhibit G to the Affidavit of Robert L. Schonfeld), so participation and attendance at the public hearing was meaningful and relevant for some non-disabled riders.

## V.  ATOC meeting held the day before paratransit cuts are announced and the March 10, 2010 notice to Able-Ride users.

There was another meeting of the ATOC on March 9, 2010, one day before the March 10, 2010 letter was sent to the Able-Ride users informing them of the service changes.  As stated in the agenda for that meeting (Exhibit H to the Affidavit of Robert L. Schonfeld, p. 2), "A draft

of service cuts for Able-Ride was handed out, discussed and explained in detail." In her previous affidavit, Therese Brezinzski of the ATOC states that although the defendant handed out, discussed, and explained the cuts in detail, the service cuts were by that time already a <u>fait accompli</u> and defendant's representatives were not interested in consulting with members of ATOC or have ATOC members participate in determining how cuts, if any were necessary, should be made. Brezinzski Affidavit, April 21, 2010, pars. 11-12.

The defendant mailed a letter dated March 10, 2010 to each Able-Ride user regarding the service cuts after they were approved by the defendant. Exhibit J to the Affidavit of Robert L. Schonfeld. While defendant was able to mail to each Able-Ride rider the notice stating that the service cuts had been approved by the defendant, defendant refused to give similar mail notice to Able-Ride users of the proposed Able-Ride cuts prior to their approval by defendant or notice of the public hearing with a clear explanation of the cuts and where they would take effect and that Able-Ride cuts were to be discussed at the public hearing. And while the defendant rescinded some proposed Long Island Bus cuts based on the public comment at the hearing, the defendant did not rescind any of the proposed Able-Ride cuts.

## VI. The April 22, 2010 Public Information Session.

After plaintiffs commenced this action on April 7, 2010 and this Court issued a temporary restraining order on April 9, 2010, defendant held a "public information session" with regard to the Able-Ride service changes on April 22, 2010. Charles Affidavit, par. 35.

Notice of this "public information session" was not sent to all Able-Ride users. The letter Ms. Brezinzski received from Mr. Charles on behalf of the Long Island Center for Independent Living stated that the purpose of the meeting was to "inform them of the proposed service changes and respond to any questions they may have concerning their clients' transportation

options." Exhibit A to Affidavit of Therese Brezinzski sworn to on May 11, 2010.    The letter to

Ms. Brezinzski asking for the names of social service groups defendant intended to invite

included only seven social service groups for the entire Nassau County.

As stated in the affidavit of Ms. Brezinzski who attended the April 22, 2010 public

information session, the session largely was taken up with Mr. Charles explaining the service

changes and answering questions from the public.  Unlike the March 1, 2010 hearing held at the

Chateau Briand where the defendant gave  "an opportunity for members of the public to

comment on the proposed changes," that were considered by the defendant,  the April 22, 2010

public information session was not aimed at soliciting comment on the proposed changes from

the public that defendant would then consider.  Rather, the session was aimed at telling the

audience that the defendant was going to make the cuts in service.[11]

## POINT I

### PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION UNDER BOTH THE PARATRANSIT SECTION OF TITLE II OF THE ADA AND THE REGULATIONS ISSUED PURSUANT TO THAT STATUTE.

Defendant concedes that plaintiffs have a private cause of action under Title II of the

ADA, said title including a section regulating paratransit services (42 U.S.C. §12143).

Defendant's memorandum of law, page 7, footnote 4.  The dispute between the parties is whether

plaintiffs have a private right of action under 49 C.F.R. §37.137, a regulation issued pursuant to

42 U.S.C. §12143.

Because 49 C.F.R. §37.137 is merely implementing the language of 42 U.S.C. §12143

and largely dovetails that statute and since defendant would concede that plaintiffs would have a

---

[11] At the argument before the Court on April 28, 2010, the Court requested that defendant provide it with the tape and a transcript of the April 22, 2010 public information session.  While plaintiffs do not know whether the defendant provided the Court with the tape and a transcript of the April 22, 2010 public information session, defendant has not provided plaintiffs with the tape and a transcript of the April 22, 2010 public information session.

private right of action under 42 U.S.C. §12143, plaintiffs have a private right of action under 49 C.F.R. §37.137 as well.

While there have been no cases interpreting whether there is a private right of action under 49 C.F.R. §37.137, an application of the general principles on the cases relating to what regulations permit a private right of action clearly demonstrate that there is a private right of action under 49 C.F.R. §37.137.

Numerous cases have held that a regulation that simply effectuates the express mandates of the controlling statute may be enforced via the private right of action available under that statute. See, e.g., Alexander v. Sandoval, 532 U.S. 275, 284 (2001); Iverson v. City of Boston, 452 F.3d 94, 100-101 (1st Cir. 2006); Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901, 906 (6th Cir. 2004). Indeed, in a decision of this Court involving virtually the same defendant as is present in the instant case, Stamm v. New York City Transit Authority, 2006 WL 1027142 *12 (E.D.N.Y. 2006),[12] the court held that "a plaintiff might be able to sue to enforce a regulation which merely applied or authoritatively construed a statute which itself could be enforced by a private right of action." In Stamm, this Court found support for the position that the transportation regulations do no more than apply or interpret the provisions of Title II of the ADA, stating: "See 49 C.F.R. §37.1 ("The purpose of this Part [49 C.F.R. Part 37] is to implement the transportation and related provisions of title II and III" of the ADA.) Id.

Therefore, in analyzing whether 49 C.F.R §37.137 provides plaintiffs with a private right of action, this Court must examine two issues: (a) could the underlying statute that the regulation is based upon (42 U.S.C. §12143) be enforced by a private right of action and (b) assuming that 42 U.S.C. §12143 is enforceable by a private right of action, is 49 C.F.R. §37.137

---

[12] Even though the Stamm decision was decided by this Court and involved virtually the same defendant as is involved here and was defended by the same counsel's office as is defending this action, defendant failed to cite this decision in its brief even though the principles of law are clearly applicable to the instant case.

a regulation that is merely applying or authoritatively construing 42 U.S.C. §12143?  The answer to both of those questions is in the affirmative.

As stated previously, the defendant concedes that Title II of the Americans With Disabilities Act which includes 42 U.S.C. §12143 is enforceable by a private right of action.   At several subsections of 42 U.S.C. §12143, it is stated that violations of 42 U.S.C. §12143 are considered discrimination for the purposes of Title II's general definition of discrimination at 42 U.S.C. §12132.  42 U.S.C. §12143(a), (e).  Discrimination for the purposes of 42 U.S.C. §12132 can be remedied through 42 U.S.C. §12133, which implicates the remedies of 29 U.S.C. §794a which implicates the remedies of 42 U.S.C. §2000d.  As discussed above, there is a private right of action under 42 U.S.C. §2000d.  Barnes v. Gorman, 536 U.S. 181, 185 (2002).  Consequently, defendant correctly concedes that there is a private right of action under Title II of the ADA, which would include  42 U.S.C. §12143.

Several courts including the Second Circuit have implicitly recognized that there is a private right of action under 42 U.S.C. §12143.  See  Anderson v. Rochester-Genesee Regional Transportation Authority,  337 F.3d 201 (2d Cir. 2003); Disability Rights Council v. Washington Metropolitan Area Transit Authority, 239 F.R.D. 9 (D.D.C. 2006); Martin v. Metropolitan Atlanta Rapid Transit Authority, 225 F.Supp.2d 1362 (N.D. Ga. 2002); Liberty Resources, Inc. v. Southeastern Pennsylvania Transportation Authority,  155 F.Supp.2d 242 (E.D. Pa. 2001).  Had these courts not found a private right of action existing under 42 U.S.C. §12143, they would have been obliged to sua sponte dismiss the actions on the ground that the courts did not have subject matter jurisdiction to entertain the issue pursuant to F.R.C.P. Rule 12(h)(3).  See, e.g., Hertz Corp. v. Friend,  -- U.S.--, 130 S.Ct. 1181, 1193 (2010).

As plaintiffs do have a private right of action under 42 U.S.C. §12143, the other issue this Court must address, as held by this Court in Stamm, is whether 49 C.F.R. §137.37 is one that "merely applied or authoritatively construed" 42 U.S.C. §12143.  The language of 42 U.S.C. §12143 itself, and in comparison to the language of 42 U.S.C. §137.37, demonstrates that 49 C.F.R. §137.37 is one that "merely applied or authoritatively construed" 42 U.S.C. §137.37 and thus a regulation in which the plaintiffs do have a private right of action.

The key subsections of 42 U.S.C. §12143 at issue in this case are 42 U.S.C. §12143(c)(6) (the "public participation" subsection requiring a public hearing, opportunity for public comment, and consultation with individuals with disabilities) and 42 U.S.C. §12143(c)(7) (the subsection placing an ongoing requirement on an entity like the defendant to engage in public participation in the development and assessment of paratransit services).  Both of these subsections required the issuance of regulations by the Secretary of Transportation.

More importantly, in defining what is to be considered "discrimination" under the privately actionable 42 U.S.C. §§ 12132 and 12143(a), the paratransit statute at 42 U.S.C. §12143(e)(1) notes that discrimination under those statutes also includes an entity's failure to comply with 42 U.S.C. §12143(c)(6) and (7) and the regulations issued under those sections (which would be 49 C.F.R. §137.37).  Consequently, a violation of the regulations is "discrimination" actionable through 42 U.S.C. §12143(e)(1) and ultimately through 42 U.S.C. §12143(a), 42 U.S.C. §12132,  42 U.S.C. §12133, 29 U.S.C. §794a and 42 U.S.C. §2000d. Therefore, through the clear language of 42 U.S.C. §12143(c)(6) and (7) and §12143(e), plaintiffs clearly have a private right of action under both those statutes and their implementing regulation, 49 C.F.R. §37.137.

A comparison between 42 U.S.C. §12143(c)(6) and (7) and 49 C.F.R. §37.137 demonstrates that the language of the regulation meets the requirement in Stamm that the plaintiffs may enforce a regulation "which merely applied or authoritatively construed a statute." 42 U.S.C. §12143(c)(6) requires "public participation", a public hearing, an opportunity for public comment, and consultation with individuals with disabilities. Similarly, 49 C.F.R. §37.137 requires "public participation" (49 C.F.R. §37.137[b]), a public hearing (49 C.F.R. §37.137[b][4]); an opportunity for public comment (49 C.F.R. §37.137[b][3]) and consultation with individuals with disabilities (49 C.F.R. §37.137[b][1],[2]). Similarly, 42 U.S.C. §12143(c)(6) and (7) mandate that the requirements of 42 U.S.C. §12143(c)(6) be ongoing, as does the ongoing requirement section of the regulation (49 C.F.R. §137.37[c]).

Consequently, as 49 C.F.R. §37.137 merely applies and authoritatively construes the privately actionable 42 U.S.C. §12143(c)(6) and (7), using the principles of Stamm, plaintiffs have a private right of action under that regulation.

The cases cited by the defendant at pages 6-7 of its memorandum from other jurisdictions to support its position that plaintiffs do not have a private right of action under the regulation all involve different statutes and regulations and are all inapplicable here. None of the statutes and involved in those cases—Disabled in Action v. Southeastern Pennsylvania Transp. Auth., 2006 U.S. Dist. LEXIS 84730 (E.D. Pa. 2006); Lonberg v. City of Riverside, 571 F.3d 846 (9th Cir. 2009); and Iverson v. Boston, 452 F.3d 94 (1st Cir. 2006) contained provisions like that at 42 U.S.C. §12143(e)(1) stating that a violation of the regulations adopted pursuant to the statute were privately actionable discrimination. Similarly, none of the regulations involved in those cases were merely applying or authoritatively construing a statute as is the case here.

Finally, at page 7, footnote 4 of its memorandum of law, defendant discusses the case

Disability Rights Council v. Washington Metropolitan Area Transit Authority, 239 F.R.D. 9

(D.D.C. 2006) which implicitly held that the plaintiffs there had a private right of action under

another paratransit regulation (49 C.F.R. 37.131[f]) pertaining to customer service. Defendant

attempts to differentiate that case on the grounds that the instant case involves public

participation in paratransit plan development while that case involved customer service.

However, violations of the portions of the paratransit statute and its accompanying

regulations on public participation in paratransit plan development are just as much

discrimination as customer service. 42 U.S.C. §12143(e)(1) defines "discrimination" to include

violations of the "public participation in paratransit plan development" sections of the statute (42

U.S.C. §12143[c][6] and [7]) as the term "discrimination" is used at 42 U.S.C. §12143(a).

Therefore, violations of the "public participation in paratransit plan development" sections of the

statute and their accompanying regulations are just as much "discrimination" under the privately

actionable 42 U.S.C. §12143(a) as discrimination based on the customer service provisions of the

statute and accompanying regulations. Consequently, contrary to defendant's position, the

distinction between the customer service and public participation portions of the paratransit

statute is a distinction without a difference.

Taking the argument one step further, in Anderson v. Rochester-Genesee Regional

Transportation Authority, 337 F.3d 201 (2d Cir. 2003), the Second Circuit like the court in

Disability Rights Council implicitly found a private right of action to enforce the customer

service regulations connected to 42 U.S.C. §12143. Consequently, as discussed above, as

customer service discrimination should be treated no differently from the public participation

discrimination involved here, the Second Circuit has implicitly held that there is likewise a

private right of action to enforce the public participation regulations connected to 42 U.S.C. §12143 at issue here.[13]

## POINT II

## THE PARATRANSIT STATUTE AND ACCOMPANYING REGULATIONS ARE APPLICABLE HERE.

At page 8 of its memorandum of law, defendant concedes that the regulations at issue "impose procedural obligations on public transit entities in connection with paratransit plan development (including public participation, outreach and consultation)." However, at pages 9-10 of its memorandum, defendant argues that where its plan is compliant with the ADA, it need not engage in the ongoing public participation required by the paratransit statute and its accompanying regulations, even where defendant conceded that it believed public involvement with regard to its proposed service elimination was appropriate considering the hardship that would be caused for some Able-Ride users. Charles affidavit, pars. 29-35.

Defendant is wrong. The paratransit statute views public participation as being an ongoing requirement. 42 U.S.C. §12143(c)(6) discusses public participation with regard to the preparation of a plan pursuant to 42 U.S.C. §12143(c)(7) and under 42 U.S.C. §12143(c)(7)(B), plans must be submitted on an annual basis. The regulation enacted pursuant to the paratransit statute also deems public participation to be an "ongoing requirement" regarding "the continued development and assessment of services to persons with disabilities." 49 C.F.R. §37.137(c). Neither the statute nor the regulation give defendant immunity from the "public participation"

---

[13] A review of the record of the appeal of the Anderson case in the Second Circuit indicates that the Metropolitan Transit Authority filed an amicus brief in that case but did not argue that there was no private right of action under the paratransit regulations. Again, regardless of the record made by the defendant in that case, the MTA could have raised that issue as it would have implicated whether the court had subject matter jurisdiction under F.R.C.P. Rule 12(h)(3).

sections of the statute or regulation merely because defendant's plan was otherwise compliant with the ADA.[14]

Strangely, the defendant appears to be using the ADA as a shield against public participation in matters pertaining paratransit services. To the contrary, the ADA was aimed at eliminating discrimination and as discussed in the previous point, failing to allow for public participation on paratransit matters is just as much a form of discrimination under Title II of the ADA as is the failure to provide ADA-compliant service. It is certainly strange for the defendant to argue that the ADA prevents it from seeking public comment on significant cuts in paratransit services where the defendant here sought public comment on proposed changes to rail, bus and subway services, the student MetroCard discounted fares and the Rockaway/Broad Channel resident rebate.

In light of the fact that defendant concedes that its proposed service elimination is 9% of the Able-Ride system and 100% of Able-Ride service in some areas of Nassau County, in light of the fact that defendant itself concedes that the service elimination will create a hardship for some Able-Ride users, and in light of the fact that the defendant provided an opportunity for public participation with regard to cuts in bus and railroad service for non-disabled persons, the proposed service elimination here certainly falls under the category of "continued development and assessment of services to persons with disabilities" implicating the public participation requirements of both the statute and the accompanying regulation.[15]

---

[14] Indeed, the opposite is true. Under the regulations, even if defendant's plan was compliant with the other regulations of the ADA, 49 C.F.R. §137.37(c) (the regulation placing an ongoing requirement of public participation on entities like defendant) is still applicable. See 49 C.F.R. §137.35(c)(1) (if a plan is compliant with the other regulations, "the requirements of §§37.137(a) and (b)... do not apply.") While the regulations give immunity to a compliant plan from those sections, they clearly do not give immunity to a compliant plan from the ongoing public participation requirement of 49 C.F.R. §37.137(c).

[15] In both the affidavit of Mr. Charles and that of Neil Yellin, the previous president of MTA Long Island Bus, reference is made to an agreement made between The County of Nassau/MTA Long Island Bus and the Federal Transit Adminstration, U.S. Department of Transportation from 1998 that was apparently unsigned by any

## POINT III

**DEFENDANT VIOLATED BOTH THE PARATRANSIT SECTION OF THE ADA AND ITS REGULATIONS IN FAILING TO SEEK PUBLIC PARTICIPATION AND COMMENT, IN FAILING TO CONSULT WITH INDIVIDUALS WITH DISABILITIES, AND IN FAILING TO HOLD A PUBLIC HEARING PRIOR TO ELIMINATING 9% OF ALL ABLE-RIDE SERVICE AND 100% OF ALL ABLE-RIDE SERVICE IN CERTAIN AREAS OF NASSAU COUNTY.**

42 U.S.C. §12143(c)(6) and (7), the "public participation" sections of the paratransit section of Title II of the ADA,  impose an ongoing duty on paratransit service providers like the defendant to (a) hold a public hearing, (b) provide an opportunity for public comment and (c) consult with individuals with disabilities with regard to its provision of paratransit service.  49 C.F.R. §37.137, the regulation enacted pursuant to 42 U.S.C. §12143(c)(6) and (7),  likewise imposes an ongoing duty of outreach, consultation with individuals with disabilities, an opportunity for public comment, a public hearing, and the "participation of individuals with disabilities in the continued development and assessment of services to persons with disabilities." (49 C.F.R. §37.137[c]).

The record of this case clearly demonstrates that defendant failed to engage in these requirements prior to eliminating 9% of all Able-Ride service and 100% of all Able-Ride service in certain areas of Nassau County.  Thus, defendant's actions prior to eliminating Able-Ride service were in violation of the ADA and its regulations and should be enjoined.

---

representatives of the Federal Transit Administration.  Defendant notes language in that agreement (assuming it is an agreement) stating that "the County of Nassau/MTA Long Island Bus shall implement a cap on all service provided outside the ¾ mile of a fixed route.  These changes will commence January 2, 1999").  While it is not clear that those changes actually did take place eleven years ago, that agreement (assuming it is an agreement) merely states the law and does not place any special requirements on the defendant.  The agreement (assuming it is an agreement) contains no provisions authorizing the defendant to eliminate paratransit service from a large section of Nassau County or immunizing the defendant from the public participation requirements of the paratransit statute and accompanying regulations in such event.  The agreement (assuming it is an agreement) was signed by Nassau County officials and implies that Nassau County has a say in paratransit service decisions and that defendant cannot make those decisions by itself as it did here.

The terms "participation" and "consult" are not defined in either the ADA or its regulations. However, using the generally accepted definition of those terms, according to the Merriam-Webster OnLine Dictionary, "participating" means "to have a part or share in something," and "consult" means "to ask the advice or opinion."

The record of this case demonstrates that the defendant did not allow people with disabilities to have a part or share in the decision or ask the advice or opinion of people with disabilities before deciding to eliminate 9% of all Able-Ride service and 100% of all Able-Ride service in certain areas of Nassau County. The defendant not consult with the ATOC before deciding on eliminating Able-Ride service or sought the ATOC's participation in that decision in any meaningful way. Instead, the defendant told the ATOC that it would be eliminating the Able-Ride service after it was a <u>fait accompli</u>.

The "public information session" held by defendant on April 22, 2010 was exactly as described in Mr. Charles' affidavit.[16] It was a public information session in which Mr. Charles presented information about the Able-Ride cuts and answered questions about the cuts. Defendant does not even allege that it was seeking comments or advice from people with disabilities and their advocates at the "public information session" regarding the Able-Ride cuts and how defendant could possibly save money without making such drastic cuts that even Mr. Charles admits would create a "hardship" for some people.

Defendant maintained both in its poster giving notice of the March 1, 2010 public hearing and at the outset of that public hearing that it was not required to hold a public hearing and seek comments from the public. The defendant apparently did not view its March 1, 2010 public hearing as a "public hearing" on the Able-Ride cuts. However, both the paratransit section of

---

[16] Even assuming, <u>arguendo,</u> that the "public information session" was a "public hearing", it should have been held prior to the decision to make the Able-Ride cuts were made and not after the decision had been made.

Title II of the ADA and the regulations issued pursuant to that statute required a public hearing and the opportunity for public comment on an ongoing basis. The public statement that no hearing was required on the proposed Able-Ride cuts (albeit erroneous) discouraged people with disabilities from attending the public hearing. Brezinzski affidavit, April 21, 2010, par. 7.

Consequently, defendant failed to solicit public comment and public participation on the Able-Ride cuts from people with disabilities as required by the paratransit statute and its accompanying regulations.

Finally, and most egregiously, defendant purposely avoided giving sufficient notice of the proposed Able-Ride cuts to people with disabilities until after the cuts had been made. Before a public hearing, notice must be given that is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

In this case, defendant went out of its way **not** to inform people with disabilities in Nassau County about the proposed Able-Ride cuts before the cuts were made.  Rather than mail Able-Ride users with a notice about the cuts prior to their approval or the public hearing (as it mailed Able-Ride users with notice of the Able-Ride cuts after they had been made) or use other media as required by the regulations, Able-Ride posted the information about the cuts on its website, possibly in pdf form.  That notice was faulty in the following ways:

> (1) if it had been in pdf form, some people with visual impairments would have been unable to access the document.

> (2) even if every Able-Ride user had access to a computer or was computer-literate, the MTA website was confusing.

> (3) the notice cited to the ADA, requiring Able-Ride users to have to find the ADA and its regulations and then understand the ADA and its regulations.

(4) assuming Able-Ride users were able to find the ADA and its regulations and then understand them, they would have then had to consult a Long Island Bus map to determine whether they would be affected by the service changes and

(5) even though defendant knew which communities would be most affected by the service cuts (northeastern Nassau County), the notice did not state that those communities would be most affected by the service cuts. On the other hand, non-disabled persons in other communities were placed on notice about which Long Island Railroad lines and which Long Island Bus routes would be affected by service cuts and they were able to come to the public hearing prepared to provide public comment with regard to their railroad or bus line.

(6) the notice informed Able-Ride users that the Able-Ride cuts were not a subject of the public hearing.

In sum, defendant's handling of the Able-Ride service eliminations which Mr. Charles concedes would cause hardship to some riders was calculated **not** to provide notice to people with disabilities in Nassau County of the service eliminations until after the decision on the service eliminations had been made by defendant. As defendant's egregious actions were a deliberate intent to avoid public participation, consultation, and comment on the Able-Ride service cuts, defendant's actions were in violation of both the paratransit statute of Title II of the ADA and the regulations issued pursuant to that statute.

## **CONCLUSION**

Plaintiff's application for a preliminary injunction to prevent the implementation of defendant's proposed Able-Ride service eliminations should be granted, the temporary restraining order should be extended, and defendant's motion to dismiss should be denied.

Dated: Garden City, New York
       May 14, 2010

MORITT HOCK HAMROFF & HOROWITZ LLP
Attorneys for Plaintiffs
By:

ROBERT L. SCHONFELD (RS7777)

25