UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DANNY ABRAHAMS, ANTHONY CELARDO,
KEVIN CHRISTMAN, LAUREN EPSTEIN,
MERYL JACKELOW, EVAN SKIDMORE,
DAVID TINDAL, and LEE WOLBROM,

                Plaintiffs,

        -against-                      **ORDER**
                                      10-CV-1535 (SJF) (ARL)

MTA LONG ISLAND BUS,
                Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

On April 7, 2010, plaintiffs Danny Abrahams, Anthony Celardo, Kevin Christman, Lauren Epstein, Meryl Jackelow, Evan Skidmore, David Tindal, and Lee Wolbrom (collectively, "Plaintiffs") commenced this action against defendant MTA Long Island Bus ("Defendant"), asserting violations of, *inter alia*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"). On April 9, 2010, Plaintiffs moved for a preliminary injunction, and a Temporary Restraining Order ("TRO") was issued "enjoining Defendant from implementing changes in its paratransit policy" until April 27, 2010. (See Docket Entry # 7). On April 28, 2010, the TRO was continued for thirty (30) days until May 27, 2010. (See Docket Entry # 20.) On May 7, 2010, Defendant moved to dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(6), and 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiffs' motion for a preliminary injunction is denied and Defendant's motion to dismiss is granted.

I.  Background

Defendant, an agent of the Metropolitan Transportation Authority of the State of New York, provides public transportation services in Nassau County. (Compl., at ¶ 7.) In addition to its fixed route public transportation services, Defendant's current Able-Ride service ("Able-Ride") provides "paratransit service to all people with a disability in Nassau County." (Id., at ¶ 8). Specifically, Able-Ride transports eligible patrons door-to-door within Nassau County, regardless of the trip's proximity to a fixed route, although the ADA only requires paratransit within three quarters of a mile of a fixed route, for medical appointments, employment, education, or personal visits. (Id., at ¶¶ 9-11.) Plaintiffs are all residents of Nassau County who have been diagnosed with impairments which qualify them for Defendant's Able-Ride services, and who regularly use Able-Ride as their primary mode of transportation. (Id., at ¶¶ 18-62.)

Plaintiffs allege that by letter dated March 10, 2010, Defendants notified Able-Ride users that as of April 12, 2010, "it would no longer be providing paratransit service to people with disabilities who live more than three-quarters of a mile from a fixed-route regular bus line or more than three-quarters of a mile from the end of a fixed-route bus line." (Id., at ¶ 12.) Moreover, Defendants would no longer offer door-to-door service in the area within three-quarters of a mile from a fixed-route bus line, but Able-Ride would transport those users to the closest bus stop. (Id., at ¶ 13.) Plaintiffs further allege that Defendants "did not give notice of its change in policy to any of the plaintiffs prior to the March 10, 2010 letter or hold any hearings at which Able-Ride users could express their concerns." (Id., at ¶ 15.) According to Plaintiffs, as the bus system in Nassau County is not comprehensive, "dropping people with disabilities at the bus stop will not ensure that

people with disabilities will be able to arrive at their destinations safely or in an efficient fashion." (Id., at 14.) Moreover, and although Defendants have made cutbacks in other services, "the cutback of the paratransit service [will] have a disparate impact on people with disabilities as opposed to the cuts made in services for non-disabled persons." (Id., at ¶ 17.)

II. Statutory and Regulatory Framework

Plaintiffs' Complaint alleges claims pursuant to the ADA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act").[1] Specifically, Plaintiffs' claims rely upon Title II of the ADA ("Title II"), as well as the regulations promulgated thereto. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

---

[1] The Complaint also alleges a claim pursuant to the Federal Fair Housing Act, 42 U.S.C. § 2604, as amended, (the "FHA"). (Compl., at ¶ 2.) The FHA prohibits discrimination upon the basis of disability against any person in the sale or rental of a dwelling, or in the terms, conditions, privileges, or provision of services in connection with the sale or rental of a dwelling. 42 U.S.C. § 3604(f). Plaintiffs allege that "the services cuts made by MTA Long Island Bus have a discriminatory and disparate impact on people with disabilities in violation of that law." (Compl., at ¶ 2.) However, the Complaint is silent as to any alleged discrimination in the provision of services in connection with the sale or rental of a dwelling, and as such, Plaintiff's FHA claim is dismissed. See Ashcroft, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

3

any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The ADA and the Rehabilitation Act impose nearly identical requirements, and as such, the claims pursuant to the ADA and Rehabilitation Act are considered together. See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) (noting that as "[n]one of the distinctions between the two statutes is relevant here ... the District Court properly 'consider[ed the] ... ADA and Rehab Act claims together'") (quoting Henrietta D. V. Bloomberg, 119 F. Supp. 181, 206 (E.D.N.Y. 2000); Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

42 U.S.C. § 12143 specifically provides that it shall be discriminatory pursuant to both the ADA and the Rehabilitation Act for:

> a public entity which operates a fixed route system ... to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities, ... that are sufficient to provide to such individuals a level of service which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system ....

42 U.S.C. § 12143(a)(1). Pursuant to 42 U.S.C. § 12143(b), the Secretary of Transportation (the "Secretary") was directed to promulgate regulations governing the implementation and operation of a paratransit service. See 49 C.F.R. § 37.121 *et seq.* Several of the Secretary's regulations are of particular relevance here.

First, the Secretary has established standards for determining the service areas in which paratransit services are required pursuant to the ADA (the "ADA Service Area"). See 49 C.F.R. § 37.131. Entities providing bus transportation "shall provide complementary paratransit service to origins and destinations within corridors with a width of three-fourths of a mile on each side of each

4

fixed route. The corridor shall include an area with a three-fourths of a mile radius at the ends of each fixed route." Id. § 37.131(a)(1)(i). Moreover, "the entity also shall provide service to small areas not inside any of the corridors but which are surrounded by corridors." Id. § 37.131(a)(1)(ii). Entities may, but are not required to, provide additional paratransit services beyond those required by the Secretary's Regulations. See id. § 37.131(g).

The Secretary has also promulgated regulations concerning the development and submission of paratransit plans. See 49 C.F.R. §§ 37.135, 37.137. In developing its initial paratransit plan, an entity must ensure, at a minimum, that the following public participation procedures are utilized:

> (1) Outreach. Each submitting entity shall solicit participation in the development of its plan by the widest range of persons anticipated to use its paratransit service. Each entity shall develop contacts, mailing lists and other appropriate means for notification of opportunities to participate in the development of the paratransit plan;
>
> (2) Consultation with individuals with disabilities. Each entity shall contact individuals with disabilities and groups representing them in the community. Consultation shall begin at an early stage in the plan development and should involve persons with disabilities in all phases of plan development. All documents and other information concerning the planning procedure and the provision of service shall be available, upon request, to members of the public, except where disclosure would be an unwarranted invasion of personal privacy;
>
> (3) Opportunity for public comment. The submitting entity shall make its plan available for review before the plan is finalized. In making the plan available for public review, the entity shall ensure that the plan is available upon request in accessible formats;
>
> (4) Public hearing. The entity shall sponsor at a minimum one public hearing and shall provide adequate notice of the hearing, including advertisement in appropriate media, such as newspapers of general and special interest circulation and radio announcements . . .

49 C.F.R. § 37.137(b)(1)-(4). The entity must also permit the participation of people with disabilities in the ongoing development and assessment of paratransit services. Id. § 37.137(c).

Following submission and implementation of its initial plan pursuant to 49 C.F.R. § 37.135(b), an entity must submit annual updates to its plan advising the Federal Transportation Authority (the "FTA") of any problems or financial burdens the entity is experiencing with plan compliance. 49 C.F. R. § 37.135(c)(2)-(3). However, if "an entity has met and is continuing to meet all requirements for complementary paratransit . . . , the entity may submit to FTA an annual certification of continued compliance in lieu of a plan update. . . . The [public participation] requirements of §§ 37.137 (a) and (b) . . . do not apply when a certification is submitted." 49 C.F. R. § 37.135(c)(1).

III. Defendant's Motion to Dismiss

A. Legal Standard

The standard of review on a motion made pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). See also Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (noting that the same standard as applicable to a motion to dismiss under Rule 12(b)(6) is employed for a motion to dismiss pursuant to Rule 12(b)(6). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007). See also Boykin v. KeyCorp, 521 F. 3d 202, 214 (2d Cir. 2008). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555, 127 S. Ct.1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, --- U.S. ----, 129 S. Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964, 171 L. Ed.2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F. 3d 147, 152 (2d Cir. 2002)). However, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ---U.S. ----, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F. 3d at 152-53.

B.  Analysis

1.  Public Participation Claim

Plaintiffs' Complaint alleges that "in changing the paratransit policy, the defendant did not consult plaintiffs or any other people with disabilities in Nassau County who use the Able-Ride system . . . ," thereby violating 49 C.F.R. § 37.137(b). (Compl., at ¶ 68.) Defendant contends that Plaintiffs' Complaint should be dismissed because "the ADA does not confer on these plaintiffs a private right of action to enforce the paratransit plan development regulation." (Defendant's Memorandum of Law ("Def. Mem."), at 6.) While Title II creates a private right of action for any person alleging discrimination upon the basis of disability by a public entity, see 42 U.S.C. § 12133 (providing that "the remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title"), Plaintiffs allege a violation of the regulations promulgated pursuant to Title II, not Title II itself. However, the implementing regulations that the Plaintiffs seek to enforce are inapplicable to Defendant's reduction in services. Therefore, no analysis of the issue of whether the Second Circuit would permit a plaintiff to bring an action pursuant to Title II to compel compliance with the Secretary's regulations. See Telesca v. Long Island Housing Partnership, Inc., 443 F.Supp.2d 397, 406 (E.D.N.Y. 2006) (declining to "analyze the interesting issue of whether the Second Circuit would permit private individuals to bring an action under the Rehabilitation Act to compel compliance with HUD regulations" because it found the regulations inapplicable to the dispute at hand).

Plaintiffs allege that Defendant did not seek "the participation of plaintiffs and other persons with disabilities into changes in the Able-Ride service policy," and as such, violated 49 C.F.R. § 31.137(b). However, the regulation at issue requires only that an "entity . . . ensure public participation in the *development* of its paratransit plan," as opposed to a modification. 49 C.F.R. § 31.137 (emphasis added). Nor are Plaintiffs correct in their assertion that 42 U.S.C. § 12143 and 49 C.F.R. § 31.137(c) require public participation in connection with each annual submission. While 49 C.F.R. § 31.137(c) directs that an entity "create an ongoing mechanism for the participation of individuals with disabilities in the continued development and assessment of services to persons with disabilities," 49 C.F.R. § 31.135 clarifies that "[i]f an entity has met and is continuing to meet all requirements for complementary paratransit . . . the entity may submit to FTA an annual certification of continued compliance in lieu of a plan update . . . [and] [t]he [public transportation] requirements do not apply when a certification is submitted" in lieu of a plan update. 49 C.F.R. § 31.135(c)(1); 31.137(c). As Defendant's Able-Ride service is being modified to provide the minimum paratransit required by the ADA, (see Compl., at ¶¶ 12-13), Defendant was not required to utilize public participation to submit its certification of compliance. See 49 C.F.R. § 37.135(c)(1). While promulgating the regulations, the Department of Transportation noted that:

> [w]hile a transit authority is gradually building up its paratransit service to the point where it meets all service criteria, it is reasonable for the transit authority to send in annual progress reports that have been developed through the public participation process set forth in the rule. Once the transit authority has fully met all the service criteria, however, there is no new "progress" to report. There is no implementation to "commence," since the service required by the rule is already up and running, and need only be continued for the transit authority to meet its ADA paratransit obligations . . . . Because the regulation already requires a mechanism for continuing public participation (see §37.137(c)), the Department is not persuaded that the public participation process accompanying plan updates is essential to provide public input to providers about paratransit service.

9

See Transportation for Individuals with Disabilities, 61 Fed. Reg. 25409-02 (May 21, 1996) (codified at 49 CFR Parts 37 and 38). Since Defendant maintained compliance with the ADA despite the Able-Ride service reductions, it was not required to provide a mechanism for public participation. Therefore, Plaintiffs' claim pursuant to Title II and its regulations fails, and Defendant's motion to dismiss the public participation claim is granted.

2. Disparate Impact Claim

Plaintiffs also allege that "[a]s defendant's budget cuts as a whole have a greater impact on people with disabilities than others because of their disabilities, the budget cuts which virtually eliminate paratransit service and transportation for people with disabilities in Nassau County have a disparate impact on people with disabilities as compared to non-disabled persons . . . ." (Compl., at ¶ 76.) To establish a prima facie case of discrimination based upon disparate impact, a plaintiff must allege: "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 575 (2d Cir. 2003) "Although the plaintiff need not show discriminatory intent under this theory, it must prove that the practice actually or predictably results in discrimination" as well as a "causal connection between the policy at issue and the discriminatory effect." Quad Enterprises Co., LLC v. Town of Southold, No. 09-2963-cv, 2010 WL 807946, at *2 (2d Cir. Mar. 10, 2010). Plaintiffs do not allege that Defendant has a facially neutral policy or procedure that has a disproportionate impact on disabled persons. Instead, they challenge a single action taken by Defendant: the budget cuts resulting in a

10

reduction of Able-Ride service. (Compl., at ¶ 76.) See also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 53 (2d Cir. 2002) (denying a disparate impact claim under the FHA because plaintiff did "not challenge a facially neutral policy or practice; it challenged one specific act").

Moreover, although Plaintiffs allege that "the budget cuts as a whole . . . will not wipe out service for non-disabled people" but they "will effectively eliminate service entirely for some people with disabilities within Nassau County . . . ," (Compl., at 17), "the DOT regulations implementing the ADA do not contemplate perfect service for the disabled." Boose v. Tri-County Metropolitan Transp. Dist. of Oregon, 587 F.3d 997, 1005 (9th Cir. 2009) (quotations omitted). See also Transportation for People With Disabilities, 56 Fed.Reg. at 45,601 (Sep. 6, 1991) (codified at Title 49 Part 37) (noting that "complementary paratransit is not intended to be a comprehensive system of transportation for individuals with disabilities [and ] that the ADA does not attempt to meet all the transportation needs of individuals with disabilities . . . ."). Although paratransit service in some areas of Nassau County will be eliminated, Nassau County's disabled community will nevertheless receive the paratransit services contemplated by the ADA. (See Compl., at ¶¶ 12-13.) See also 49 C.F.R. § 37.131 (describing the paratransit service area). Accepting Plaintiff's argument would effectively extend the ADA's paratransit requirements to include any and all services that have ever been provided, thus penalizing Defendant for voluntarily providing additional paratransit services in the past, and discouraging other public entities from going beyond the requirements of the ADA. Accordingly, Defendant's motion to dismiss Plaintiffs' disparate impact claim is granted.

IV. Plaintiffs' Motion for a Preliminary Injunction

In order to obtain a preliminary injunction, a plaintiff must demonstrate (1) a likelihood of irreparable injury in the absence of injunctive relief; (2) either a likelihood of success on the merits, or "sufficiently serious questions going to the merits to make them a fair ground for litigation" and a balance of hardships tipping decidedly in the plaintiff's favor. Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005); Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004). When a party "seeks a preliminary injunction that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000) (quoting Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999)). In light of my determination that Plaintiffs have failed to state a claim upon which relief can be granted, Plaintiffs cannot demonstrate a likelihood of success on the merits. Accordingly, Plaintiffs' motion for a preliminary injunction is denied.

IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is denied, and Defendant's motion to dismiss the Complaint is granted. The Clerk of the Court is directed to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
UNITED STATES DISTRICT JUDGE

Dated: May 25, 2010
      Central Islip, New York